## SEEBERGER *v.* HARDY.

## SPALDING *v.* YOUNG.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

Nos. 93, 276. Argued November 21, 1893. — Decided December 4, 1893.

In estimating the amount of duty to be imposed upon shell opera glasses under the tariff act of March 3, 1883, 22 Stat. 488, c. 121, the value of the materials should be taken at the time when they are put together to form the completed glass.

The question whether the opera glasses should be regarded as falling within the description of paragraph 216, as a manufacture composed wholly or in part of metal is not raised by the record; and, no instruction based upon that interpretation having been asked of the court below, this court does not find it necessary to express an opinion on the subject.

THESE were actions against the collector of the port of Chicago to recover duties claimed to have been erroneously assessed upon certain consignments of pearl opera glasses. The facts and the questions of law involved in the two actions were similar, except in some unimportant details. The opera glasses consisted of lenses in a metal frame, with an outer covering of shell. The question litigated was under which of the three following provisions of the tariff act of March 3,

1883, 22 Stat. 488, c. 121, were so-called shell opera glasses dutiable:

By paragraph 143, (page 497,) "Porcelain and Bohemian glass, chemical glassware, painted glassware, stained glass, and all other manufactures of glass, or of which glass shall be the component material of chief value, not specially enumerated or provided for in this act," were dutiable at 45 per cent *ad valorem*.

By paragraph 216, (page 501,) "Manufactures, articles, or wares, not specially enumerated or provided for in this act, composed wholly or in part of iron, steel, copper, lead, nickel, pewter, tin, zinc, gold, silver, platinum, or any other metal, and whether partly or wholly manufactured," were subject to 45 per cent *ad valorem*.

By paragraph 486, (page 514,) "Shells, whole or parts of, manufactured, of every description, not specially enumerated or provided for in this act," were dutiable at 25 per cent *ad valorem*.

As these opera glasses were made of a combination of three materials, namely, glass, metal, and shell, they were also claimed to be subject to Rev. Stat. § 2499, as amended by the said act of March 3, 1883, (page 491,) viz.: "On all articles manufactured from two or more materials the duty shall be assessed at the highest rates at which the component material of chief value may be chargeable. If two or more rates of duty should be applicable to any imported article, it shall be classified for duty under the highest of such rates."

Upon the trial, certain depositions were offered in evidence tending to show the relative value of the component parts of which the opera glasses were made up, to the reading of which counsel for the defendant objected "upon the ground that the said depositions did not give in detail the values of the metal, shell, and glass, component parts of the pearl opera glasses in this suit, in the condition in which the opera glass manufacturer received them." The depositions were admitted and counsel excepted.

In this connection the court charged the jury that "in determining which of the materials (manufacture of metal,

manufacture of shell, or manufacture of glass) composing the opera glasses in question was the component material of chief value, they must ascertain what were their values at the time they were in such condition that nothing remained to be done upon them except putting them together to make the perfected glasses." Defendant excepted to this instruction, and asked the court to charge "that in arriving at what was the component material of chief value in the said opera glasses, they should look and look only at the respective values of the metal, shell, and glass in the raw and unmanufactured state in which the opera glass manufacturer received them, and before their respective values had been enhanced by the manufacturer by means of any work, labor, or time expended thereon." This was refused. In each case the jury returned a verdict for the plaintiff importer, upon which judgment was entered, and the collector sued out this writ of error.

*Mr. Assistant Attorney General Whitney* for plaintiffs in error.

*Mr. W. Wickham Smith* for defendants in error. *Mr. Percy L. Shuman* was with him on the brief.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

These cases turn upon the question whether, in estimating the value of the component materials of which a certain manufactured article is made, the value of the materials shall be taken in the raw and unmanufactured condition in which the manufacturer receives them, and before their respective values have been enhanced by work expended upon them, or in the condition that nothing remains to be done upon them by the manufacturer except putting them together to make the completed glass.

It appeared the manufacturer bought the metal in the shape of ingots, the shell in the natural form of mother-of-pearl, and the glasses in the rough state in which they leave

the cast. In neither case did the defendant introduce any testimony. Nothing, therefore, appears in the record as to the value of the materials when purchased appropriate to each opera glass. It is evident that the question involved is one of considerable importance, as in some articles, the raw material is the main cost, and in others, the labor.

We think the theory of the importer was the correct one, and that the value of the materials should be taken at the time they are put together to form the completed glass. There are grave difficulties in making the estimation at any other time. Whether, for instance, the shell shall be taken in its rough and uncleansed state as it comes from the animal, or after it has been cleaned and polished. Shall the glass be taken in its polished or unpolished state? Shall the value of the metal be taken immediately after it is smelted or in a more advanced state of manufacture? The position of the government seems to be that the value of the component materials should be taken as they go into the hands of the manufacturer. But one manufacturer may buy them in their rough state, another in their polished state, and another in their final state, ready to be put together in the form of a glass. The value of the raw material, as is shown in this case with respect to the shell and copper, may be subject to violent fluctuations. One manufacturer may have bought them at a high price, another at a low price, both being held a considerable time in stock. What price shall govern? Thus, in appraising the value of a piece of furniture made of wood and silk plush, it would be obviously inequitable to take the value of the lumber as it comes from the tree, and the silk from the worm or the spinner. The true rule would seem to be to take each of them as they go into the furniture.

While it may be true that to a certain extent the government may be at the mercy of the importers' witnesses in estimating the value of the labor put upon the raw material as it goes into the completed article, this difficulty cannot be allowed to defeat the plain object of the enactment. Such difficulties were doubtless foreseen, as they did not appear

to be of such magnitude as to prevent Congress, in the act of 1890, from providing particularly that " the value of each component material shall be determined by the ascertained value of such material in its condition as found in the article," and thus putting the question at rest. We regard this as merely declaratory of the law.

There is another point raised in this case, namely, that the opera glasses should be regarded as falling within the description of paragraph 216, as a manufacture composed wholly or in part of metal, and, therefore, dutiable at 45 per cent *ad valorem.* As this question is not raised by the record, and no instruction was asked of the court based upon this interpretation, we do not find it necessary to express an opinion upon the subject.

The judgment of the court below in each case, is therefore,

*Affirmed.*