## UNITED STATES *v.* MEADOWS (No. 598).[1]

COMPONENT OF CHIEF VALUE IN COTTON AND LEATHER SLIPPERS.

The merchandise consisted of slippers made of cotton and leather, the parts of the slippers composed of each of the two materials being made separately for use in producing the completed article. In determining the component of chief value in merchandise of this kind inquiry will be made in each case as it presents itself to discover at what stage the several parts were completed for use in being put together as a completed whole; that stage will be "its condition as found in the article." Here the expense of sewing the pieces of cotton cloth together, in preparation for uniting them with the leather parts, enters into the value of the cotton so employed. According to the evidence cotton was the component of chief value in these slippers and they are dutiable under paragraph 324, tariff act of 1909.—Seeberger *v.* Hardy (150 U. S., 420).

### United States Court of Customs Appeals, May 29, 1911.

APPEAL from Board of United States General Appraisers, G. A. 7168 (T. D. 31297).

[Reversed.]

*D. Frank Lloyd,* Assistant Attorney General (*Martin T. Baldwin* on the brief), for the United States.

*B. A. Levett* for the appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges. ·

BARBER, Judge, delivered the opinion of the court:

The importation in this case consists of slippers composed of cotton and leather. They were assessed for duty at the rate of 50 per cent ad valorem under the provision for articles of wearing apparel of which cotton is the component material of chief value in paragraph 324 of the tariff act of August 5, 1909.

The appellees claim duty should have been taken at the rate of 10 per cent ad valorem under paragraph 450 of the same act as shoes in chief value of leather made from hides of cattle of the bovine species.

The United States does not claim that the provisions of paragraph 450 are inapplicable if it be held that paragraph 324 does not apply, and it is therefore only necessary to insert here paragraph 324 and that part of paragraph 481 which defines the words "com-

[1] Reported in T. D. 31665 (20 Treas. Dec., 1197).

ponent material of chief value" found in paragraph 324. They are as follows:

324. Clothing, ready-made, and articles of wearing apparel of every description, composed of cotton or other vegetable fiber, or of which cotton or other vegetable fiber is the component material of chief value, made up or manufactured, wholly or in part, by the tailor, seamstress, or manufacturer, and not otherwise provided for in this section, fifty per centum ad valorem.

481. * * * And the words "component material of chief value," wherever used in this section, shall be held to mean that component material which shall exceed in value any other single component material of the article; and the value of each component material shall be determined by the ascertained value of such material in its condition as found in the article. · * * *

The only question in the case is whether the cotton or the leather of which these slippers are made is the component material of chief value.

The facts are undisputed and are as follows: The soles and heels of the slippers are made chiefly of leather from the hides of cattle of the bovine species, while the uppers are made of cotton. In the process of making the slippers the cotton cloth, which afterwards forms the uppers, is first cut to shape ready to be put into the slipper. It is conceded that the cost of this operation should be applied to the cotton. The leather composing the sole and heel undergoes cutting to shape and certain other minor operations to bring it into condition ready to be put into the slipper, and it is conceded that the cost of these operations should be applied to the leather. After the pieces of cloth have been cut to shape to form the uppers and before being united to the soles they are sewed together with cotton thread. To do this sewing, including the thread used therefor, costs 9 pence per dozen pairs, which, if added to the cost of the cotton composing the uppers, renders the cotton the component material of chief value. If it is not so added, the leather is the component material of chief value.

Restated, and including the respective items of cost, the essential facts are as follows: The conceded value of the cotton in the slippers is 3 shillings and 11½ pence per dozen pairs; the conceded value of the leather is 4 shillings and 7 pence per dozen pairs. If the 9 pence, which is the cost of the thread and work necessary to sew the uppers together, be considered as a part of the value of the cotton, then the cotton is the component material of chief value; otherwise not. The real question, therefore, is whether the 9 pence per dozen pairs is a part of the value of the cotton in its condition as found in the slippers or whether it is a part of the expense of manufacturing the slippers and so not be considered in determining the value of the cotton therein.

It is agreed that the cost of attaching the heel and sole to the upper is an expense incident to the manufacture of the slippers and applies to both the cotton and the leather. It is therefore to be disregarded in arriving at the value of the respective component materials of the slippers.

It appears from the record that upon the first consideration of this case the Board of General Appraisers unanimously sustained the protest and reversed the action of the collector. Thereafter a rehearing was granted upon the request of the United States, whereupon a majority of the board adhered to its previous decision, while a minority favored sustaining the collector's action. Able and exhaustive opinions, presenting fully the respective views of the majority and minority members of the board, are contained in the record.

The question involved is not entirely free from difficulty and is said to be of considerable importance in customs practice.

Both sides rely upon the case of Seeberger *v.* Hardy (150 U. S., 420) as authority, and we proceed to its consideration. The articles there involved were opera glasses composed of glass lenses in a metal frame with a covering of shell, and the question arose whether the component material of chief value was metal, shell, or glass, and therefore under which of the applicable paragraphs of the tariff act of March 3, 1883, they should be assessed for duty. The question before the Supreme Court involved the construction by it of the following clause, which by the provisions of the act of 1883 was made a part of Revised Statutes, section 2499:

SEC. 2499. * * * And on all articles manufactured from two or more materials the duty shall be assessed at the highest rates at which the component material of chief value may be chargeable. If two or more rates of duty should be applicable to any imported article, it shall be classified for duty under the highest of such rates. * * *

The court below had charged the jury that to determine the question as to which of these different materials—manufactures of metal, manufactures of shell, or manufactures of glass—was the component material of chief value, "they must ascertain what were their values at the time they were in such condition that nothing remained to be done upon them except putting them together to make the perfected glasses," and the correctness of this instruction was reviewed by the Supreme Court. We quote from the opinion in that case sufficiently to show the facts and the holding of the court:

These cases turn upon the question of whether in estimating the value of the component materials of which a certain manufactured article is made, the value of the materials shall be taken in the raw and unmanufactured condition in which the manufacturer receives them, and before their respective values have been enhanced by work expended upon them, or in the condition that nothing remains to be done upon them by the manufacturer except putting them together to make the completed glass. * * * The manufacturer bought the metal in the shape of ingots, the shell in the natural form of mother-of-pearl, and the glasses in the rough state in which they leave the cast. In neither case did the defendant introduce any testimony. Nothing, therefore, appears in the record as to the value of the materials when purchased appropriate to each opera glass. It is evident that the question involved is one of considerable importance, as in some articles, the raw material is the main cost, and in others, the labor. * * * We think * * * that the value of the

materials should be taken at the time they are put together to form the completed glass. There are grave difficulties in making the estimation at any other time. Whether, for instance, the shell shall be taken in its rough and uncleansed state as it comes from the animal, or after it has been cleaned and polished. Shall the glass be taken in its polished or unpolished state? Shall the value of the metal be taken immediately after it is smelted or in a more advanced state of manufacture? The position of the Government seems to be that the value of the component materials should be taken as they go into the hands of the manufacturer. But one manufacturer may buy them in their rough state, another in their polished state, and another in their final state, ready to be put together in the form of glass. The value of the raw material, as is shown in this case with respect to the shell and copper, may be subject to violent fluctuations. One manufacturer may have bought them at a high price, another at a low price, both being held a considerable time in stock. What price shall govern? Thus, in appraising the value of a piece of furniture made of wood and silk plush, it would be obviously inequitable to take the value of the lumber as it comes from the tree, and the silk from the worm or the spinner. The true rule would seem to be to take each of them as they go into the furniture.

In the opinion the Supreme Court also referred to the fact that in the act of 1890 Congress had provided that "the value of each component material shall be determined by the ascertained value of such material in its condition as found in the article," which it will be noted is identical in language with that part of paragraph 481 here under consideration, regarding which the court said in effect that this statutory provision was designed to settle the question that the labor put upon the raw material should be included in determining the value of the component material and that it "was merely declaratory of the law."

It will be observed that although the court in this case clearly declared that the value of the materials should be determined as of the time when they had reached such a condition that nothing remained to be done upon them by the manufacturer except putting them together, there still remains open in each case that may arise the determination of the question as to whether or not that stage has or has not been reached, and this is the precise issue here.

A similar question was passed upon in United States v. Hoeninghaus (137 Fed. Rep., 478). The Circuit Court of Appeals for the Second Circuit held that the cost of warping silk yarn, which was the last process to which the silk was subjected before weaving it with cotton filling to make cloth composed of silk and cotton, was a part of the value of the silk as a component material of the cloth. In its opinion the court there in substance said that it appeared in Seeberger v. Schlesinger (152 U. S., 581) that the shells which were a part of the shell opera glasses under consideration in Seeberger v. Hardy, supra, had been brought to the proper polish before they were united with the tubes that contained the lenses and which when united produced the opera glasses, and they likened the warping of the silk to the polishing of the shells as being in each case the last treatment or manipulation that the component material received to bring it to proper shape to form a part of the completed article.

Again, in United States *v.* Johnson (154 Fed. Rep., 39), decided by the Circuit Court of Appeals for the Second Circuit, the articles were catheters and bougies. The evidence showed they were made, in substance, in the following manner: A tubular core of cotton or silk was first made and then treated to several coatings of varnish. The varnish was made of copal gum and linseed oil. After these coatings had been given to the core and the varnish had dried sufficiently workmen manipulated the same by hand to smooth the varnish and give the core the requisite degree of flexibility. After this had been accomplished the varnish was polished by hand with pumice stone and a cloth. It appeared that the value of the cores before receiving the varnish was greater than the value of the varnish, taking into consideration the value of the oil and copal which composed it and the expense of mixing the two; and that the cost of the labor of applying the varnish to the cores was greater than either the value of the cores or the value of the varnish. It was claimed by the importers that the cost of applying this varnish and manipulating the cores should not attach to the final product but was a part of the cost of the varnish in the completed article and, therefore, that the varnish was the component material of chief value. The court held that the cores were the component material of chief value and that the cost of applying the varnish to the cores was to be treated as attaching to the completed article and not to either of the component materials, assuming varnish to be one of the component materials. An application for a writ of certiorari in this case was denied by the Supreme Court (207 U. S., 595).

These three cases are all that it seems necessary to consider in disposing of the case at bar.

Here the slippers are made of leather and cotton cloth, the leather comprises the soles and the heels; whether the soles consist of more than one thickness, and if so how the same are fastened together does not appear. The uppers consist of several thicknesses of cotton cloth cut to shape. It is conceded that the expense of so cutting these pieces of cloth attaches to the cost of the cotton as the component material; that the expense of shaping the soles and heels attaches to the cost of the leather as the other component material; and that the expense of attaching the uppers to the soles and heels is a part of the expense of manufacturing the slippers and so attaches to neither the leather nor the cotton as a component material.

The substance of the appellant's contention is that the cotton in the slippers, and as therein found, has been cut in pieces of the required sizes and shape and then sewed together; that all this was done before the two component materials of chief value, namely, the leather and the cotton, were united to make the finished article, the slippers, and that this constitutes the manipulations which the cotton has received to bring it to such a condition that nothing remains to be done thereto except to put the two component materials together, and it

is urged that the cost of sewing together these uppers is a part of the value of the cotton as a component material, equally as is the cutting out the same, which is concededly so.

The gist of the appellee's contention is that the Government's, counsel confuses the process of putting the components in condition to be put together with the process of putting them together, and that he treats the upper as the component and not the cotton. The appellee further says that after the several parts of the upper have been cut to proper shape and size the next process to which they are subjected is to assemble them as parts of the slippers, and that the sewing them together is such a process.

It is pointed out that if this is not so it leaves it to the option of the manufacturer by a single change in the order of his processes to thereby determine which of component materials is the one of chief value. That in this case if the manufacturer had seen fit to combine the process of sewing the uppers together with that of uniting the uppers and the sole, as a result thereof the contention of the Government clearly could not be maintained. To this reply is made that it is true that the chronological order in which processes are applied may have the result claimed by appellee, but that does not affect the rule that whatever is in fact done to put the components into such condition that nothing remained to be done thereto except to put them together must still have force, and that in this case the sewing of the uppers was done before they were joined to the soles, as a result of which final process the slipper was produced.

We recur to the case in the Supreme Court. The component materials there were manufactures of glass, of shell, and of metal. In just what state of finish they were when united does not clearly appear, neither does it appear whether the opera glasses after the components were united received any further treatment or finish, but the court said that whatever was done to each of these components before they reached such a condition that as a component nothing further remained to be done thereto should be a part of the value of the respective component parts.

It may be that in the case at bar the manufacturer might have adopted a different order in combining the component materials, but we take the facts as they appear and do not concern ourselves with possibilities.

Ordinarily it would seem that in the manufacture of articles composed of two or more components, one of which would be of chief value, the amount of treatment received by each before being put together and the precise order as to time in uniting them to make the finished article, would be determined in view of the results obtained, and that course would be adopted that gave the best results. Mechanical appliances may be changed or new methods may be discovered, as a result of which a different chronological order of combination

may be found more advantageous than the one theretofore in use. In each case, however, inquiry will show at what stage the component parts have been made ready to be united to form the complete whole, and at that stage its condition will be "its condition as found in the article." Such is evidently the theory of the decisions of all the cases above referred to and the reasoning should be applied in the case at bar.

Here the cotton composing the uppers was sewed together before it was united with the leather, and it is found in that condition in the finished slippers.

In the manufacture of the slippers in this case the cotton had not reached the condition which required nothing more to be done thereto before being united with the leather until the pieces of cloth were sewed together. The expense of sewing them, therefore, attaches thereto and renders cotton the component material of chief value, regardless of the name by which these pieces of cotton were called after the sewing had been accomplished. They may be called uppers, or they may be called manufactures of cotton, as were the glass, metal, and shell in the Seeberger case termed manufactures of these articles respectively, but the *fact* remains, nevertheless, that it is the *cotton* that is the component material.

The result is that the judgment of the Board of General Appraisers is *reversed*.