TURNER & CO. ET AL. *v.* UNITED STATES (No. 2264).[1]

1. COMPONENT MATERIAL OF CHIEF VALUE.

In determining the component material of chief value, it has been invariably held by unmistakable implication that where the manufacturer himself fabricates any one of the component materials in order to bring it to a condition ready for use in the article, the aggregate value of the original material plus the expenses of labor, etc., incurred in bringing it to its finished condition should be taken as "the value" of that material; and that the price which such component material when ready for use might bring, if sold as a separate commodity, would not enter into the calculation.

2. VACUUM BOTTLES—COMPONENT MATERIAL OF CHIEF VALUE.

The manufacturer of vacuum bottles, dutiable according to the component material of chief value by virtue of paragraph 386, tariff act of 1913, bought the metal containers for 8.65 marks and made the glass bottles for 5.80 marks. It was shown that he sold the glass bottles for 9 marks. The metal, and not the glass, was the component material of chief value.

United States Court of Customs Appeals, January 24, 1924.

APPEAL from Board of United States General Appraisers, Abstract 45651.

[Reversed.]

*Allan R. Brown* for appellants.
*William W. Hoppin,* Assistant Attorney General (*John A. Kemp,* special attorney, of counsel), for the United States.

[Oral argument October 4, 1923, by Mr. Brown and Mr. Hoppin.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, and BLAND, Associate Judges; HATFIELD, Associate Judge, participating in the decision by agreement of counsel.

MARTIN, Presiding Judge, delivered the opinion of the court:

The merchandise now upon appeal consists of thermos bottles. Each of these is composed of a blown-glass bottle incased in a metal container made of iron and aluminum. The appraiser reported that they were dutiable at the rate of 45 per cent ad valorem as non-enumerated articles composed in chief value of blown glass, under

———————

[1] T. D. 39997.

paragraph 84, tariff act of 1913. The collector accordingly assessed duty at that rate.

The importers protested against the assessment, claiming that the articles were composed in chief value of metal, not glass, and were therefore dutiable at the rate of only 20 per cent ad valorem under paragraph 167 of the same act.

The protest was heard upon evidence by the Board of General Appraisers, and was overruled. The importers appealed from that decision.

The issue presented by the record is a narrow one. It is conceded by the parties that the importation is a nonenumerated article dutiable at the rate which would be chargeable upon it if it were composed wholly of "the component material thereof of chief value." (Par. 386, tariff act of 1913.) It thus becomes necessary to determine which is its component material of chief value. It is admitted that this competition lies between the glass of which the inner bottle is made and the metal composing the outer container, there being no other material of substantial value entering into the article.

The thermos bottles were made in Germany. The manufacturer did not himself fabricate the metal containers but purchased them in their finished state ready for use from other manufacturers who made a specialty of them. The price paid for the containers thus purchased was 8.65 marks each. The glass bottles, however, were entirely fabricated by the manufacturer of the thermos bottles. These when finished ready for use cost him 5.80 marks each, which included the cost of materials, labor, general expenses, and every outlay of whatever description incurred in their manufacture. The manufacturer also made sales of similar glass bottles manufactured by him, the selling price in such cases being 9 marks each. This price of course was designed to cover not only the cost of manufacturing the glass bottles, but also the cost of selling them, and a profit upon the transaction. The manufacturer, however, made no separate sales of the metal containers when purchased by him, but used all of them in the construction of the thermos bottles.

It may be repeated that the manufacturer of the imported articles manufactured the glass portion of each at a cost of 5.80 marks and purchased the metal part at a cost of 8.65 marks. If these facts stood alone it would plainly follow that the metal part would be the component material of chief value in the article. But as above stated the manufacturer made sales of similar glass bottles as separate commodities at the price of 9 marks each. The Government contends that this selling price should be taken as the true value of the glass as a component material in the thermos bottles, and accordingly that glass must be held to be the component material

of chief value therein. This contention was in substance sustained by the board, and it was upon that view that it overruled the protest.

We are constrained to disagree with this decision of the board. The statutory provision in question reads as follows:

386. * * *; and on articles not enumerated, manufactured of two or more materials, the duty shall be assessed at the highest rate at which the same would be chargeable if composed wholly of the component material thereof of chief value; and the words "component material of chief value," wherever used in this section, shall be held to mean that component material which shall exceed in value any other single component material of the article; and the value of each component material shall be determined by the ascertained value of such material in its condition as found in the article. * * *.

The foregoing provision appeared in identical language in the tariff act of October 1, 1890, and has been reenacted without change in every tariff revision since that time. It has been the subject of numerous decisions by the board and the courts, and although the present question has never been directly decided it has invariably been held by unmistakable implication that where an article is dutiable according to its component material of chief value, and the manufacturer himself fabricates any one of the component materials in order to bring it to a condition ready for use in the article, the aggregate value of the original material, plus the expenses of labor, etc., incurred in bringing it to its finished condition, should be taken as the "value" of that material within the sense of the paragraph, and that the price which such component material when ready for use might bring, if sold as a separate commodity, would not enter into the calculation.

In the leading case of Seeberger v. Hardy (150 U. S. 420) the merchandise was opera glasses composed of metal, shell, and glass lenses. They were dutiable at the rate applicable to their component material of chief value. It appeared that the foreign manufacturer had bought the metal in the shape of ingots, the shell in the natural form of mother-of-pearl, and the glasses in the rough state in which they leave the cast. It was held that the component materials should be compared in value in their condition when ready to be placed together into the finished opera glasses. The court said, "While it may be true that to a certain extent the Government may be at the mercy of the importer's witnesses in estimating the value of the labor put upon the raw material as it goes into the completed article, this difficulty can not be allowed to defeat the plain object of the enactment."

In the case of United States v. Meadows (2 Ct. Cust. Appls. 143; T. D. 31665) the merchandise was slippers composed of cotton and leather, and the question was which was the component material of chief value. This was ascertained by taking the several values of the original materials and adding thereto the costs incident to

bringing each of them to a condition ready for combination into the completed article. In other words, the final cost of the respective parts to the manufacturer of the slippers was taken as the basis of comparison, without mention of the selling price of such parts if put upon sale as separate commodities.

In the case of Andresen & Co. (T. D. 24856—G. A. 5516), decided in 1903, the Board of General Appraisers fully considered the present subject and aptly expressed its opinion in the following syllabus:

MATERIAL OF CHIEF VALUE.—The ascertained value of the several component materials of an article should represent the cost of each component material as it exists at that stage of manufacture requisite to enter into the completed article under consideration.

See also United States *v.* Fondeville (7 Ct. Cust. Appls. 135; T. D. 36457); True Fit Waterproof Co. *v.* United States (id. 489; T. D. 37107); Field & Co. *v.* United States (id. 332; T. D. 36876); Calhoun *v.* United States (122 Fed. 894); United States *v.* Hoeninghaus (137 Fed. 478); United States *v.* Johnson (154 Fed. 39).

In none of the foregoing cases was there any reference to the selling price of the component materials if put upon the market as separate commodities in a finished or partly finished condition. In each case the basis of comparison was the value or cost of the material in question plus the cost of bringing it to its finished condition ready for combination with other materials in the manufacture of the imported article. Under the authorities, therefore, we think that in the present case the aggregate cost of the finished glass bottle as fabricated by the manufacturer of the thermos bottles should have been taken as the value of the glass as a component material for comparison with the value of the metal as found in the container. Such a comparison would support the claim of the importers, and accordingly their protest should have been sustained.

In support of this conclusion we may add that if the manufacturer of the thermos bottles had fabricated the metal containers as well as the glass bottles the relative costs of the two component materials as thus manufactured would plainly have furnished the proper basis of comparison between them. In such case the same result might have been reached as in this. But in any event the manufacturer was entitled to fabricate one part of the composite article and purchase the other parts, and the rule of comparison would remain unchanged. In the case of United States *v.* Meadows, supra, we made the following comment upon an analogous question:

It is pointed out that if this is not so it leaves it to the option of the manufacturer by a single change in the order of his processes to thereby determine which of component materials is the one of chief value. That in this case if the manufacturer had seen fit to combine the process of sewing the uppers together with that of uniting the uppers and the sole, as a result thereof the contention of the Government clearly could not be maintained. To this reply is made that it is

true that the chronological order in which processes are applied may have the result claimed by appellee, but that does not affect the rule that whatever is in fact done to put the components into such condition that nothing remained to be done thereto except to put them together must still have force, and that in this case the sewing of the uppers was done before they were joined to the soles, as a result of which final process the slipper was produced.

The decision of the board is reversed and the case accordingly remanded. *Reversed.*

### DISSENTING OPINION.

BLAND, Judge: The appraiser found that the value of the glass bottles was 9 marks each, and that the value of the iron covers was 8.65 marks each, and the collector classified and levied duty upon this appraisement. The burden was upon the importer to show that the value of the glass bottle "in its condition as found in the article" was less than the value of the iron contained "in its condition as found in the article." This proof, I submit, is not furnished by the record.

The evidence shows that the manufacturer or assembler of the thermos bottles purchased the iron containers in large quantities at the wholesale price of 8.65 marks each, and that he sold the glass bottles manufactured by himself in Germany in large quantities at 9 marks each, and that it cost him to manufacture the glass bottles 5.80 marks each. The appraiser and collector and the Board of General Appraisers found the value of the glass bottle to be 9 marks. The actual cost of production of the iron container was not ascertained by the appraiser, nor was it disclosed by the evidence, but its selling price was compared with the selling price of the glass bottle, which, I think, was a fair comparison. The statute relative to determining the values of component materials does not prescribe how the value shall be obtained, but it certainly would be a very illogical and dangerous rule to require that the wholesale selling price of one commodity should be regarded as its value, and that the cost of manufacturing the other article should be regarded as its value. We find ourselves in the anomalous position of being compelled to find that if the manufacturer of the iron container instead of the manufacturer of the glass bottle had assembled the thermos bottle, the glass would have been the component material of chief value instead of iron, for the reason that he would have taken his production cost as the value of his iron and the purchase price as his value of the glass. Surely Congress did not intend that our customs administrative officers should be subjected to such an unjust and uncertain rule in determining component material of chief value.

In construing this statute, according to the opinion of the majority of this court, if the question were asked, What is the value of the

iron? they would answer, "What the assembler of the thermos bottle paid for it," which includes selling cost, etc. To What is the value of the glass bottle? they would answer "What it cost the manufacturer of the thermos bottle to produce it." It is obvious that the last answer is incorrect if the first one is correct. We know that the glass bottle was worth what it was selling for, if the iron container was worth what it was selling for. Surely, we must apply the same measure to both articles in determining their re- spective values, and I know of no good reason for refusing to take the manufacturer's selling price of the glass bottle as its value, and especially if in the same appraisement you apply the rule to the iron container, nor do I see any statute or decision which would prevent the appraiser from finding the cost of production to the producer of both articles and then comparing them. While "cost of production" may not mean "value" (it is so held by the majority of the court) it is certainly a fair means of comparison if "value" is so defined and used for both competing articles. The majority of the court seem to feel that they are bound by certain decisions, and especially by Seeberger *v.* Hardy (150 U. S. 420).

After examining numerous decisions on the question of component material of chief value, I find no one of them which decides the question presented in this case, nor do I find in any of them any principle or rule laid down which would justify the statement that in determining the value of component materials of an article we must take production cost in one instance and selling price in another. On the contrary, the general principles laid down for determining values in all tariff matters would seem to be at variance with the conclusions reached by a majority of the court. The Seeberger case, supra, does not touch upon the question involved in this case; it merely decides that we are to take the value, or production cost, of the competing articles, not in their raw state or their unfinished state, but in the state in which they are found as they go into the completed article. In the case at bar, if we apply the Seeberger case, it is my contention that the value of the glass bottle when it was finished and ready to go into the article was 9 marks, and that the value of the iron container was 8.65 marks, or that the value of the iron container is its production cost when compared with the pro- duction cost of the glass bottle. Now, in what way does the See- berger case prevent the appraiser from applying the same standard of measuring value to both competing articles in estimating their value at the time they are ready to go into the completed article? It is urged that United States *v.* Meadows (2 Ct. Cust. Appls. 143; T. D. 31665) has a direct bearing upon this case. The same question raised in the case at bar is not even touched on nor hinted at in the Meadows case. There the question was whether leather or cotton

was the component material of chief value in shoes made of the two commodities. The soles and heels were leather, the tops were cloth. The chief question was as to whether the labor expended in uniting the several layers of cloth fabric should be charged to the cloth, and as to whether sewing the uppers to the soles with cotton thread should be charged to the cotton fabric. The court held, and properly so, that the layers of cotton composing the uppers were sewed together before they were united with the leather, and that the expense of putting the layers together should be charged to the uppers in determining their value. What bearing has this decision upon the perplexing question before the court in the case at bar, namely; shall we apply one rule of determining value to one commodity, and another rule of determining value to the other one? True enough it took the production cost of the articles as their value, but no question about the value of a purchased article was involved, so the same principle is not involved. If Congress next month should pass a new tariff law making the duty on articles of which the component material of chief value was iron higher than that of which the component material of chief value was glass, we would probably find that the enterprising iron-container merchant would be the assembler of the thermos bottle, and would be submitting his production cost to this court in order to show that the value of the glass bottle which he was required to purchase was greater than the iron container which he manufactured at a low cost. I am not ready to believe that the framers of the tariff act ever intended such an uncertain and; I may be pardoned in saying, absurd method for determining the value of the competing materials.

The decision of the majority of this court rests entirely upon the proposition that "value" as used in this section means "cost" to the fabricator, which definition they no doubt concede is prompted only by precedent, administrative and judicial. If precedent forbids the appraiser to determine "value" in this kind of case to be cost of production of the container and of the glass bottle, or if precedent forbids the appraiser from finding the value of the two competing component materials in any other manner, it must be by reason of administrative practice or judicial decision. Administrative practice may be proved, or courts may take judicial knowledge of it. The record furnishes no proof of administrative practice in this kind of case, and I have found no decision of any court which holds that *cost to the assembler* of a competing component material shall be the value of one component material if the other component material is manufactured by himself. Therefore there is no precedent either in administrative practice or in judicial decisions for holding that "value" as used in this section of the statute must be construed to mean cost to the assembler.

But it is urged that in the Seeberger case and the Meadows case, supra, the principle was settled that "value" meant "cost." In those cases the finding of the appraiser that the value of the parts, all of which were produced by the assembler, was their cost of production, was not disturbed for the reason that comparing cost of production value with cost of production value was fair, and the statute had not specified how this value should be determined. Therefore the principle as applied to that statement of facts was not inequitable. But the courts have never held that production cost shall be comparable with selling price, and both at the same time be termed "value." Therefore there is no precedent for the decision of the majority of the court in principle or otherwise. The principle involved in determining value in the case at bar is entirely different from the principle involved in the Seeberger case, where both compared items stood on a comparable basis. I have sought in vain to find anything in the statute that would justify a rigid rule that the appraiser in determining value must consider only cost, and I have looked in vain in the decisions of the courts for any plausible reasoning why the appraiser in construing value must be confined to cost alone. It impeaches the judgment and good sense of the appraiser for him to be compelled to hold that the value of an article whose value he is by law required to estimate, is its cost. Where "value" is used in the statute in this instance, it has no strings to it, no qualifying phrases; it is left to the appraiser to find the value, and I submit that if he should find the cost of production of the iron container and the cost of production of the glass bottle and compare the two, that there is nothing in the statute itself, nor in administrative practice, nor the decisions of the courts, that could successfully question its correctness.

We will assume that it costs $3,000 to manufacture a Packard automobile and that it sells for $4,500. Is anyone going to pretend that the value of that car at the factory or any place else is only $3,000? No; it is worth more than that if it is worth anything. It has a greater value than $3,000, and under any rule of determining value, under any statute, it would be declared to be worth more than $3,000. If the selling price of the glass bottle in Germany at its place of manufacture and at the place where the thermos bottle was assembled was not shown in the evidence even, then I would contend that the appraiser under the law would be required to take a value other than its factory cost if he took another value for the competing article; that he would be justified in adding to the factory cost a reasonable selling profit. This would be reviewable if unreasonable, but where the market selling price is given of both competing articles, it surely is fair to accept both of them if you accept one. And let me repeat here, that there is nothing in the law that forbids the appraiser

from taking the market value or any other standard of value. The majority of the court say that the decisions of the courts construing the statute, and the administrative practice pursuant thereto, forbids his taking any value but the cost to the assembler. It is not urged that there was any reason for the court arbitrarily adopting the cost of production as the "value" in the cases cited, and it is not disputed but what its application to the facts at hand show its absurdity.

The decisions of the courts on "value" as used in this section of the statute, have gone only so far as to sanction the "production cost" standard of value where producing cost was used in comparing all competing articles. New conditions bring new rules of law where the statute is silent as in the present instance, and this court should never hold that the value of one competing article is its selling price, and of the other its cost of production. If the cost of production is to be accepted as the rule for the glass bottle, it was surely the duty of the importer to show the production cost of the iron container if he hoped to overcome the findings of the appraiser and collector. This he did not do, and I have no good reason yet assigned why the appraiser's finding should be wafted arbitrarily aside without proof of its incorrectness. It was the duty of the appraiser to ascertain the component material of chief value of the merchandise and report the same to the collector. This he did in the fairest way possible, and it should stand.

The Board of General Appraisers in my judgment by their unanimous decision were correct in sustaining the appraiser and collector, and their decision should be *affirmed.*