(C.D. 2435)

Ross Products, Inc. v. United States

United States Customs Court, Second Division

(Decided March 12, 1964)

*Siegel, Mandell & Davidson* (*David Serko, Allan H. Kamnitz, and Joshua M. Davidson* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Alfred A. Taylor, Jr., James F. O'Hara,* and *Herbert L. Warren,* trial attorneys), for the defendant.

Before Lawrence, Rao, and Ford, Judges

Rao, Judge: The collector of customs at the port of New York invoked the provision for manufactures of paper, not specially pro-

vided for, in paragraph 1413 of the Tariff Act of 1930, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, and supplemented by Presidential proclamation, 85 Treas. Dec. 116, T.D. 52462, to assess duty at the rate of 17½ per centum ad valorem upon an importation of articles described as model ships.

It is the contention of plaintiff that said merchandise is more properly provided for in paragraph 1403 of said act, as modified by said Annecy protocol and supplemented by Presidential proclamation, 85 Treas. Dec. 138, T.D. 52476, as manufactures of papier mache, not specially provided for, and that, therefore, duty at the rate of 12½ per centum ad valorem should have been assessed.

As the case has been presented for decision, there are two questions which require determination. In the first instance, the inquiry is whether or not the involved model ships are composed in any part of papier mache. If they are, the question then arises as to whether paper or papier mache is the component material of chief value.

The collector has adopted a classification which presumes that said ships are in chief value of paper, and the presumption is that his classification is correct. *F. H. Kaysing* v. *United States*, 49 C.C.P.A. 69, C.A.D. 798. Consequently, the burden was upon the plaintiff to show that the instant ships were composed, at least in part, of papier mache and that such part was the material of chief value in the finished article.

Plaintiff sought to shoulder this burden through the testimony, taken pursuant to letters rogatory, of one Taimaru Kobayashi of Funabashi City, Japan. His deposition shows him to be the owner and manager of the company which manufactured the instant merchandise, a sample of which is in evidence as plaintiff's exhibit 1. Actually, it appears that much of the work of the company was performed by so-called subcontractors—individuals who worked at their various homes under instructions from the company.

The witness gave the following description of the manufacturing process:

The paper-mache [*sic*] is used for the hull. In order to make a mold of the hull, firstly the cardboard is soaked in the water and when it becomes fairly soft, it is punched out into the form of the hull. Six or seven sheets of the cardboard in case of thick ones, six sheets in case of not so thick ones are pasted together one by one with adhesive, placed in the mold of gun-metal and pressed while heating, and then filed away the part which jutted out and given the last finish. For the sail, Japanese paper is used and cut into the form of sail. The two sheets of the paper are pasted together, placed in the gun-metal mold, and pressed while heating. In that manner, the sail will look like swelling. The same process is employed in manufacturing small flags. A base upon which the "model ship" is placed is made of cardboard. A fine enameled wire is used as a sail rope, and at the same time serves as decoration.

The [*sic*] all parts as stated above are assembled finally and painted with lacquer.

Although the witness admitted that the model ships in issue had been made some years before and that records "were not kept in books in detail from the beginning," he, nevertheless, gave a complete breakdown of all costs involved in the production of these articles. These figures show the following:

| Cost of materials | Yen |
|---|---|
| cardboard for the hull | 2. 20 |
| adhesive | . 15 |
| Japanese paper | 1. 20 |
| enameled wire | . 25 |
| wood | . 25 |
| cardboard for the base | . 30 |
| lacquer | 4. 30 |
| | 8. 65 |

| Cost of fabrication | |
|---|---|
| hand pressing of hull | 3. 00 |
| mold for sail | 1. 80 |
| painting | 3. 20 |
| assembling | 1. 75 |
| | 9. 75 |

| Other costs | |
|---|---|
| Packing | 4. 20 |
| shipping | 1. 60 |
| cartage | 1. 50 |
| breakage | 1. 482 |
| profit | 2. 998 |
| | 11. 780 |

Total costs and profit_____ Yen 30. 18

It further appears that, at the time these model ships were sold, the price was 4,200 yen per gross and that the witness, who supervised all phases of the business, had personally designed this item and had negotiated its sale to a buyer for the plaintiff.

Under the circumstances of the witness' familiarity with every aspect of the production of the merchandise at bar and his knowledge of all operations of his company, the court is of opinion that the figures he quoted are adequate to reflect the costs involved and are acceptable as a *prima facie* showing thereof.

An analysis of these figures would seem to indicate that, from the point of view of both cost of material and of labor, the most expensive individual item entering into the manufacture of these ships was

the item of lacquer, and the cost of applying it. Of course, neither the collector's classification nor the plaintiff's contention contemplates such element as the component material of chief value, and it must be admitted that if the cost of materials and labor for the production of hulls, sails, and flags are attributed to a single component, either paper, or papier mache, as the case may be, their combined cost will exceed that of any other component of the involved ships.

It is the contention of counsel for the plaintiff that the evidence plainly shows that hulls, sails, and flags are made of papier mache, as that word has been judicially construed and defined, and that, since that material is of chief value in the model ships, they should have been classified as manufactures of papier mache. For the reasons hereinafter expressed, we are inclined to agree that this is so.

In the case of *Morimura Bros.* v. *United States*, T.D. 17634, G.A. 3682, it was held by the Board of General Appraisers that certain trays, made of layers of paper pressed together, then covered with paste or clay and coated with lacquer, were composed of papier mache. The decision was predicated, in part, upon the following description of papier mache in Ure's Dictionary of Arts, Manufactures and Mines (1878):

Papier-Mâché may be said, therefore, to consist of three varieties: —1. Sheets of paper pasted together, exposed to great pressure, and then polished; * * *.

"Papier-mâché" is defined in the 1929 Summary of Tariff Information as follows:

Papier-mâché is a hard, tough, and plastic substance generally made from pulped waste paper, mixed with other matter, such as china clay, rosin, etc., or made from sheets of paper glued and pressed together. It is molded when moist into architectural ornaments, lacquered boxes, trays, dress forms, window dummies, signs, figures, toys, Easter, Halloween, and carnival novelties and other articles.

Funk & Wagnalls New Standard Dictionary of the English Language, 1956 edition, defines "papier-mâché" as:

A tough plastic material made from pulped paper or from paper-pulp, containing an admixture of size, paste, oil, resin, or other substances, or from sheets of paper glued and pressed together. The various kinds, molded when moist, are made into architectural ornaments, lacquered boxes, trays, durable utensils, etc.

In the cases of *Strauss-Eckardt Co., Inc.* v. *United States*, 66 Treas. Dec. 835, T.D. 47439, and *Same* v. *Same*, 69 Treas. Dec. 726, T.D. 48272, this court recognized that papier mache may be produced in various ways and that one accepted method involved the process of gluing sheets of paper together and pressing them.

This is exactly the method described in the instant record for the production of the hulls—sheets of cardboard, shaped into the form

of a hull, pasted together and subjected to pressure in a mold—; of the sails and flags—sheets of Japanese paper pasted together and subjected to pressure in a mold. The result is a rigid material, formed into predetermined shapes, for use in the manufacture of a toy or toylike article. As is evidenced by the testimony of the witness, the number of sheets employed in the process determines the thickness of papier mache, but seemingly does not affect its intrinsic character. Accordingly, whether two sheets are involved, or six or seven or more layers are pasted and pressed together, is not a factor in the consideration of what constitutes papier mache.

Inasmuch as we consider the process by which the sails and flags were made to be one which creates a papier-mache substance, it is immaterial that the witness was of opinion that only the hull of the ship was made from papier mache. Whatever may be his understanding of the meaning of the term "papier mache," and the record carries no explanation thereof, it is the common meaning in the United States, as judicially determined, which is controlling.

Under the provisions of paragraph 1559 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1954, the component material of chief value of any article is that material "which shall exceed in value any other single component material of the article involved; and the value of each component material shall be determined by the ascertained value of such material in its condition as found in the article."

In determining what is the component material of chief value, comparisons of the respective values of the various materials should be made at the time they are ready to be assembled into the finished article. *Seeberger* v. *Hardy*, 150 U.S. 420, *Kaplan Products & Textiles, Inc.* v. *United States*, 49 Cust. Ct. 145, C.D. 2376. "The value of the materials of which an article is composed shall be ascertained at the time when they are in such condition that nothing remains to be done to them except putting them together." *United States* v. *Bernard, Judae & Co.*, 15 Ct. Cust. Appls. 172, T.D. 42231.

Adding together the costs of the materials for the hull, sails, and flags, of 2.20, 0.15, and 1.20 yen, and of the labor involved in bringing them into condition for assembling of 3 and 1.80 yen, produces a total cost of 8.35 yen, which exceeds that of any other single component of the subject articles. Consequently, the component of greatest cost and, hence, of value in the instant articles is papier mache.

Moreover it seems pertinent to observe that, although the raw material used in the making of hull, sails, and flags, was initially paper, that substance had ceased to exist, and was converted into papier mache, prior to assembly into the finished article. There was, therefore, no paper in the model ship, in its finished condition, except for

the cardboard stands, and the collector's finding that it was a manufacture in chief value of paper was clearly erroneous.

Based upon the foregoing considerations, we hold that the model ships here in issue are dutiable at the rate of 12½ per centum ad valorem pursuant to the provision in said paragraph 1403, as modified and supplemented, for manufactures of papier mache. The claim in the protest to that effect is sustained. All other claims are however, overruled.

Judgment will be entered accordingly.