(C.D. 2521)

WHEELER & MILLER SHELFORD, INC. } *v.* UNITED STATES

United States Customs Court, First Division

(Decided March 31, 1965)

*Lawrence & Tuttle* (*Edward N. Glad* and *George R. Tuttle, Jr.*, of counsel) for the plaintiffs.

*John W. Douglas*, Assistant Attorney General (*Samuel D. Spector, Sheila N. Ziff, James F. O'Hara*, and *Mollie Strum*, trial attorneys), for the defendant.

Before OLIVER, WILSON, and NICHOLS, Judges

NICHOLS, Judge: The merchandise involved in this case was limited at the trial to items described on the invoice as follows:

| 3047 | Rattan Peel Tub Chair |
|------|----------------------|
| 3361-B | Child's Tub Chair, varnished |
| 3362-B | Child's Arm Chair, varnished |

These items were imported from Hong Kong and entered at the port of San Francisco on August 15, 1957. They were assessed with duty at 27 per centum ad valorem under paragraph 409 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, as furniture wholly or in chief value of rattan. This merchandise is claimed to be properly dutiable at 18 per centum ad valorem under paragraph 412 of said tariff act, as modified, as chairs in chief value of wood.

The pertinent provisions of the tariff act, as modified, are as follows:

| Tariff Act of 1930 para- graph | Description of Products | Rates of Duty | | |
|---|---|---|---|---|
| | | *** | B | *** |
| 409 | Furniture wholly or in chief value of rattan, reed, bamboo, osier or willow, malacca, grass, seagrass, or fiber of any kind. | | 27% ad val. | |
| * | * * * * | * | | * |
| 412 | Furniture, wholly or partly finished, and parts thereof, wholly or in chief value of wood, and not specially provided for: Chairs_____ | ____ | 18% ad val. | |

This case was submitted on the testimony of Lawrence Muilenburg, examiner at San Francisco, the deposition of Cheung Ka, taken pursuant to a commission issued by this court before the vice consul of the United States at Hong Kong, the official papers which were received in evidence, a sample of item 3047 (plaintiffs' exhibit 1), and several photographs, one of which is illustrative of item 3362–B (plaintiffs' illustrative exhibit 4).

Cheung Ka stated, in his deposition, that he was the manager of Hop Kee Co., and that he had had charge of the manufacture of the furniture involved herein. He described the process as follows:

First we cut the rattan cane to the proper size; after that we bend the rattan cane to form the frame of the seat; after that we bend the rattan cane to form the legs and arms; after that we nail the legs as well as the arms to the frame of the seat; then nail the support between the legs of the chair; and then the frame is finished.

After the frame is done we start wrapping the whole chair. First we start wrapping the legs of the chair; then we use rattan peel to wrap the arms of the chair by revolving the peel around the arms; then we weave the seat with rattan peel; then we weave the back of the chair; then we weave the rattan skirt in front of the seat; and then the weaving of the chair is completed.

This witness also gave the cost of the labor in attaching the peel to the frame and the cost of nails, tin feet, and varnish used. The cost of the other items was agreed to by stipulation of counsel. The manufacturing costs thus shown are as follows:

| Item | Rattan cost | Labor cost for frame | Peel cost | Labor cost for weaving peel | Nails, etc. |
|---|---|---|---|---|---|
| 3047_____ | HK $1.80 | HK $0.80 | HK $1.60 | HK $1.00 | HK $0.10 |
| 3361–B____ | HK $1.00 | HK $0.30 | HK $1.10 | HK $0.70 | HK $0.30 |
| 3362–B____ | HK $1.10 | HK $0.35 | HK $1.25 | HK $0.80 | HK $0.30 |

Mr. Muilenburg testified that rattan cane is used to make up the frame of these items and that skin or peel is woven on the cane. He said that the invoices gave a breakdown of the cost of the materials and

the cost of labor to make the frame and to make the weaving. The invoice amounts are the same as those stated above, except that, for item 3047, the cost of the peel is given as $1.80, and the amounts for nails, etc., of the 3 items are less. The witness stated that the cost of the frame was in excess of the value of the peel. The cost of weaving represented the cost of weaving the rattan peel onto the finished frame.

Plaintiffs claim that these chairs are in chief value of peel and not of rattan and that they are, therefore, dutiable as chairs in chief value of wood under paragraph 412, as modified, *supra*. *Calif-Asia Co., Ltd.* v. *United States*, 39 CCPA 133, C.A.D. 475. Defendant contends that plaintiffs have failed to prove that the merchandise was not correctly classified by the collector as furniture in chief value of rattan. The issue joined by the parties is whether or not the costs of labor in making the frames should be added to the cost of the rattan *per se* in determining whether the chairs are in chief value of rattan or of peel.

It will be noted that besides rattan and peel, the finished chairs incorporate other materials: Nails, tin feet, and varnish. While not in contention as components of chief value, they are of some value. The nails are combined with the rattan by manufacture to form a chair frame, and a further manufacturing operation then combines the frame with its wrapping, seat, and back, all of peel. The Government would determine the component material of chief value by comparing the value of the peel, as a mere material, with the value of the manufactured rattan frame, minus, it would appear, only the nails, but not minus the cost of nailing. Such a proposition seems to be its own refutation.

The authorities agree that the relative value of the component materials is their cost when they are so far advanced that nothing remains to be done but assemble them together. *Seeberger* v. *Hardy*, 150 U.S. 420; *United States* v. *Meadows*, 2 Ct. Cust. Appls. 143, T.D. 31665; *United States* v. *Bernard, Judae & Co.*, 15 Ct. Cust. Appls. 172, T.D. 42231; *United States* v. *Rice-Stix Dry Goods Co.*, 19 CCPA 232, T.D. 45337; *United States* v. *Jovita Perez et al.*, 44 CCPA 35, C.A.D. 633, and cases cited; *Ross Products, Inc.* v. *United States*, 52 Cust. Ct. 51, C.D. 2435.

Except where the statute contemplates that a mixture may be a component material of chief value (*cf. Border Brokerage Company* v. *United States*, 40 Cust. Ct. 298, C.D. 1997) and except for chemical combinations and mixtures (*cf. Vandergrift Forwarding Co. et al.* v. *United States*, 37 Cust. Ct. 18, C.D. 1793), the materials must be single materials: Two or more different materials cannot be preassembled together to make a combined material for value comparison purposes. *Swiss Manufactures Association, Inc., et al.* v. *United States*, 39 Cust. Ct. 227, C.D. 1933, appeal dismissed 45 CCPA 129.

Reference is made to the late Judge Mollison's able exposition of the reasons for this rule, making its repetition needless here. Since the rattan chair frame incorporates nails which doubtless are indispensable to hold it together, it is not a single material and its value is not a valid measure for chief value comparison.

The court has considered *United States* v. *Meadows, supra,* in which it was held, in a value comparison, that a slipper with a leather sole and heel, and cotton uppers, was in chief value of cotton. The value of the "cotton" embodied, it was held, the cost of sewing together different precut parts of such uppers, both the cost of labor and the cotton thread used for the purpose. The value of the "leather" concededly embodied the cost of attaching the heels. The uppers were first completely assembled, and then attached to the soles. The court did not have before it and did not consider as a possible alternative whether the cost of combining the leather soles and leather heels and the parts of the uppers might alike have been excluded for value comparison purposes. The only item in contention was the cost of assembling the uppers. Whether as mere material the cotton or the leather was more valuable does not appear. The distinctive feature of the case appears to be that on each side of the equation only one material was involved. The different parts of the upper, and the thread used to unite them, were all of cotton, and the lower part was all of leather. Hence, the case is in no way authority governing the case at bar where the frame, the alleged "material" for chief value purposes, is made up of rattan and nails and labor. This 1911 case appears to be a striking extreme so far as assembly costs are held to enter into the value of "material." Whether our appellate court would regard it as authority today, we do not know. *Cf. United States* v. *Stern Co. et al.,* 15 Ct. Cust. Appls. 274, T.D. 42467. It is not necessary to extend the authority of *Meadows* beyond its facts, and on its facts it cannot be regarded as holding that a preliminary assembly of two different materials constitutes one of the two materials for value comparison purposes.

We note, in this connection, the recent case of *Kaplan Products & Textiles, Inc.* v. *United States,* 51 CCPA 2, C.A.D. 828, where the merchandise consisted of satin brocade cloth and was classified by the collector as in chief value of rayon. It was produced by bonding cellophane to aluminum foil, which was cut into narrow strips and woven with rayon yarn. The aluminum cellophane-laminated strip was of greater value than the rayon yarn. No evidence was offered as to the values of the component materials of the strips, aluminum and cellophane, individually. It was held that plaintiff had, therefore, failed to show that the merchandise was not in chief value of rayon.

It would seem to follow that the method used by the Government in making the value comparison in this case was erroneous. But before

sustaining the protest, we must find that the plaintiffs have established that the rattan value is lower than the peel value. Plaintiffs bring the two values close together by using their values as material, ignoring all labor done on either component material, including that done before assembly began. This is not correct, as is shown above. The deposition, collective exhibit 6, seems to say that the rattan was cut and bent to the required shapes before assembly began. This must have cost something, but the cost for it is not brought out. We cannot assume that the cost of cutting and bending would not bring the value of the rattan, in its final stage before assembly, above that of the peel. Under the circumstances, the protest cannot be sustained.

On the record as it stands, the protest is overruled and judgment will be rendered for the defendant.