**PACIFIC WOOD PRODUCTS CO.**

v.

**UNITED STATES.**

**C.D. 4175; Protest No. 67/24939–93099.**

United States Customs Court,
Second Division.
Feb. 9, 1971.

Glad & Tuttle, Los Angeles, Cal. (Robert Glenn White, Los Angeles, Cal., of counsel), for plaintiff.

L. Patrick Gray, III, Asst. Atty. Gen. (Susan Cassell, New York City, trial attorney), for defendant.

Before RAO, FORD, and NEWMAN, Judges.

---

2. See Tariff Classification Study, Vol. 2, page 516, Vol. 8, page 320, and Vol. 12, page 67, Reference No. 54—First Suppl. Rept.

FORD, Judge:

This case presents for the determination of the court the proper classification of certain unfilled seat cushions made of rayon which were imported with certain wooden furniture and chairs. They were assessed with duty at the rate of 30 per centum ad valorem and 25 cents per pound under the provisions of paragraph 1312, Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas.Dec. 150, T.D. 54108.

[1] Plaintiff contends the seat covers constitute an entirety with the wooden furniture and chair frames imported with them and as such are subject to duty at the rate of 17 per centum ad valorem for the chair pillows and 10½ percentum ad valorem for the pillows for the other furniture under the provisions of paragraph 412, Tariff Act of 1930, as modified by said Sixth Protocol, *supra.* Plaintiff does not contest this classification for the furniture frames.

The pertinent statutory provisions provide as follows:

Paragraph 1312, as modified by T.D. 54108:

> Manufactures of filaments, fibers, yarns, or threads, of rayon or other synthetic textile, and textile products made of bands or strips (not exceeding 1 inch in width) of rayon or other synthetic textile, all the foregoing, wholly or in chief value of rayon or other synthetic textile, not specially provided for (except gill nets or netting) ............... 25¢ per lb. and 30% ad val.

Paragraph 412, as modified by T.D. 54108.

> Furniture, wholly or partly finished, and parts thereof, wholly or in chief value of wood, and not specially provided for:
> Chairs .................... 17% ad val.
> Other furniture ........... 10½% ad val.

The record in this case consists of the testimony of one witness called on behalf of plaintiff and receipt in evidence of four exhibits. The factual situation developed by the record is quite similar to that established in the case of Pacific Wood Products Co. v. United States, 57 Cust.Ct. 490, C.D. 2848 (1966), which record was not incorporated. So far as is pertinent to this decision, the record has been limited to the rayon covers for the following item numbers:

| | |
|---|---|
| 8008 | arm chair |
| 8011 | rockers |
| 8012 | settee |
| 1408 | armchair frame |
| 1412 | sofa settee frame |
| 6008 | armchair frame |
| 6011 | rocker frame |
| 6012 | settee frame |
| 1409R/L | love seat frame (R indicating right, L indicating left) |

The official papers were received in evidence without being marked. The evidence establishes the imported furniture to be of the variety known as loose cushion furniture and that frames alone are not useable without a cushion. The rayon covers were imported to be used with, after filling with either polyfoam or genuine rubber foam after importation, the various pieces of furniture. The frames alone could not be practically used as furniture and the cushions, except on rare occasions were sold together with the frames. The rare occasions usually occurred when a decorator desired to use a different fabric. While there is nothing unique about the seat covers and any seat cover of the same dimension could be used with the frame, the intent and practice was to sell them as a unit.

Plaintiff in this action asks the court to reconsider and depart from the position taken in the earlier *Pacific Wood Products* case, *supra.* In that case, we made the following statement:

> Paragraph 412, *supra,* under consideration herein, insofar as the question of entireties is concerned, covers furniture wholly or partly finished and wholly or in chief value of wood. Accordingly, it is incumbent upon plaintiff herein to affirmatively establish the component material in chief value of the entirety which it is claimed to be. The record herein is

barren of any substantial evidence that the articles, if considered entireties, are wholly or in chief value of wood. The only evidence along this line which was introduced by plaintiff was the invoices which, it was contended, "amply illustrate that the wooden chairs, rockers, settees, ottoman and sofa frames with the value of the cushion covers included would still be in chief value of wood."

In determining the chief value of merchandise, "value," when used in this connection does not, of course, relate to the invoiced or dutiable values of the parts of an article. United States v. Bacharach, 18 CCPA 353, T.D. 44612. Therefore, the separate prices invoiced to the importer for the parts of the imported "entirety" are insufficient proof of the component material of chief value of the "entirety," since they represent the prices paid by the importer rather than the costs to the manufacturer of the separate parts. United States v. Rice-Stix Dry Goods Co., 19 CCPA 232, T.D. 45337. Accordingly, since there is no competent evidence in the record to establish the component material of chief value, we find it unnecessary to consider the issue of entireties claimed by plaintiff.

In the instant case, plaintiff contends the evidence which establishes the component material in chief value is the appraised value as indicated on the invoice. At first impression, it appears to be a logical position. A mature consideration of the position indicates the fact that no matter how logical the position taken may appear, it is legally insufficient.

The question of component material was passed upon in the case of Seeberger v. Hardy, 150 U.S. 420, 14 S.Ct. 170, 37 L.Ed. 1129 (1893), and has been consistently followed since 1890 when the current[1] statutory definition of component material in chief value was first enacted.

In the case of United States v. Bacharach, 18 CCPA 353, T.D. 44612 (1931), the method for determination of component material was set forth as follows:

* * * The rule has long been settled that the proper method of determining component material of chief value is by determining the value of the separate parts of the article at the time when they are ready to be combined to make the completed article. "Value," when used in this connection, does not relate to the dutiable value of the component materials, but to the cost of such components to the manufacturer of the completed article. There was no proof in this case establishing such a value, and the presumption arising from the collector's classification was not overcome. A portion of paragraph 1460 of the Tariff Act of 1922 reads as follows:

Par. 1460. * * * and the words "component material of chief value," wherever used in this Act, shall be held to mean that component material which shall exceed in value any other single component material of the article; and the value of each component material shall be determined by the ascertained value of such material in its condition as found in the article. * * * [This is the identical language used in paragraph 1559, *supra.*]

The court concluded "that the dutiable value of the two parts of an article has little if anything to do with the determination of the component material of chief value * * *."

This is readily apparent since the question of component material involves the cost to the manufacturer whereas the appraised value whether it be foreign value, export value or United States value relates to the freely offered price not the cost. Both cost of production and constructed value while relating to the cost of the material include other cost factors and profit with which we are not concerned in determining the question of component material.

---

1. Paragraph 1559, Tariff Act of 1930.

In the case of F. W. Woolworth Co. v. United States, 67 Treas.Dec. 1310, Abstract 31216 (1935), plaintiff apparently relied upon the theory of appraised value since it contended that the values were set out separately on the invoice and were not disputed by the appraiser. The court rejected this theory citing *Bacharach, supra.*

Plaintiff makes the following statement in its brief:

* * * Detailed proof establishing component material values beyond all reasonable doubt has never been required in customs law when the given article could only be one of two materials and where there is presumptive evidence, supported by consideration of the composite article itself, in support of an allegation that one of the materials is the component material of chief value, John S. Connor, Inc. v. United States, 54 Cust.Ct. 213, 217–218, C.D. 2536 (1965).

This case is not controlling in the instant case and is readily distinguishable. In the *Connor* case, *supra,* reliance by the court was on the insignificant proportion of bamboo utilized. The court by a visual examination and not reliance upon the appraised value held the merchandise to be in chief value of wood. Such a situation does not apply to the frames and covers involved herein. Nor could the legal maxim of *"de minimis non curat lex"* utilized in the *Connor* case, *supra,* be applied to the covers involved herein.

Since the record is barren of any legal evidence relating to component material, we again find it is not necessary to consider the question of entireties. The claims in the protest are therefore overruled.

Judgment will be entered accordingly.

RAO, C. J., and NEWMAN, J., concur.