BEFORE THE SECOND DIVISION, AUGUST 13, 1948

**No. 52498.**—Cunard White Star, Ltd. *v.* United States, protest 27115–K (New York).

LAWRENCE, Judge: The question presented by this protest is one of component material of chief value of an importation consisting of a model of the

S. S. *Mauretania* with glass showcase therefor, which was classified by the collector of customs at the port of New York as an entirety and assessed with duty at 45 per centum ad valorem under the provision in paragraph 397 of the Tariff Act of 1930 for—

Articles or wares not specially provided for, * * * if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal * * * .

It is plaintiff's contention that the importation should have been assessed under the provisions of paragraph 412 of said act at the rate of 33⅓ per centum ad valorem as—

* * * manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for, * * *

The only testimony offered by the plaintiff herein is a deposition taken in England pursuant to a commission issued by this court and received in evidence as plaintiff's exhibit 1. Said deposition contains the statements of the managing director of the firm which made the ship model and designed and ordered from another manufacturer abroad the showcase therefor.

The deponent stated that the components contained in the model of the S. S. *Mauretania* are wood, brass, wire, cotton, silk, celastoid, glue, various paints and pins, and "there may be some cartridge paper." When asked to state as to each component, restricting his answer to the manufacture or preparation of each of said components to the point at which it was made ready or prepared to be made a part of said model, the—

    (a) Quantity
    (b) Cost of raw materials used
    (c) Labor cost
    (d) Usual general expenses
    (e) All other costs and expenses incurred in manufacturing or preparing said component to the point at which it enters the model

the deponent replied, in corresponding order, as follows:

(a) I cannot answer this as my records were lost in the blitz.

(b) I have answered that in my answer to the Thirteenth interrogatory when I gave the approximate costing statement. [I cannot remember the quantities of any of the components, but I do remember when I was costing the articles I allowed for the timber £20, for the brass 20/–, cotton and silk 2/6d., celastoid 7/6d., glue 14/–, paint £4 to £5, pins 5/– and cartridge paper 2d.]

(c) I cannot give the amounts for each individual item. I can only give that very roughly as £400. That is for the finished model. Within that £400, I think the labor on the brass parts would come to about £80. I have answered this somewhat vaguely because my records have been destroyed.

(d) The overheads and profit would take up the balance of the selling price to the Cunard White Star Limited.

(e) It is impossible to give that. I have no records available and I have no time sheets to which to refer.

As to the showcase for the ship model, he described the components thereof as follows:

The showcase was made of mahogany on a deal frame. I think the framing was 4″ by 2″. The plinth was 1″ mahogany. The plate-glass sides, of which there were four, and the top, were ¼″ polished. The whole was screwed together with brass screws and the glass was set in wash leather.

He was unable to state the cost of the raw materials used in the manufacture of the showcase, the labor cost and usual general expenses, and any other costs or expenses incurred in manufacturing or preparing the components thereof to the point where they entered the showcase, for the reason that he "did not make the

showcase." However, he did assert that the showcase was specially made for this model of the S. S. *Mauretania* and that he had designed the showcase and ordered it, and added that he did not believe it could be adapted to any other practical use.

There were no cross-interrogatories or other evidence on behalf of the Government.

For a determination of the component material of chief value of an importation, our appellate court has laid down the following rule:

This court has repeatedly held that the proper method of determining component material of chief value is to ascertain the costs of the separate parts or component materials to the manufacturer at the time they are ready to be assembled or combined into the completed article.   *   *   *

*United States* v. *Rice-Stix Dry Goods Co.,* 19 C. C. P. A. (Customs) 232, T. D. 45337.  Note also *Turner & Co. et al.* v. *United States,* 12 Ct. Cust. Appls. 48, T. D. 39997; *United States* v. *Mrs. S. Bacharach,* 18 C. C. P. A. (Customs) 353, T. D. 44612; and *Adolph Goldmark & Sons Corp.* v. *United States,* 31 C. C. P. A. (Customs) 6, C. A. D. 241.

On the record before us, we find that the evidence offered by the plaintiff is indefinite, incomplete, and of insufficient weight to support the burden of proof resting upon the plaintiff to overcome the presumption of correctness attaching to the collector's classification.

We, therefore, hold that the claim of the plaintiff alleging that the model of the S. S. *Mauretania* with showcase therefor should properly be classified under the provisions of paragraph 412, *supra,* must be, and hereby is, overruled, and the decision of the collector is affirmed.

Judgment will issue accordingly.