(C. D. 1248)

La Manna Azema & Farnan, Inc. v. United States

United States Customs Court, Third Division

(Decided June 6, 1950)

*John D. Rode* for the plaintiff.

*David N. Edelstein,* Assistant Attorney General (*Richard E. FitzGibbon,* special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

JOHNSON, Judge: This action involves the proper classification of grenadine sirup, without alcohol, imported from France. Duty was assessed thereon at the rate of 20 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930, as a nonenumerated manufactured article. In addition thereto, a tax at the rate of 0.5144 cent per pound of total sugars therein was levied under the provisions of the Sugar Act of 1937. The following claims are made in the protest:

Said merchandise is not dutiable as assessed, as it is provided for either specifically or by virtue of Par. 1559. It is properly dutiable at only 15% under Par. 38, or at 15¢ per gal. under Par. 808 either directly or by virtue of Par. 1559, or by virtue of the United Kingdom Trade Agreement (T. D. 49753) at 10¢ per gal. under Tariff Act of 1930 Par. 810. If dutiable under Par. 808, then the bottles or jugs, the containers of the merchandise the subject hereof, are dutiable under the provisions of Par. 810.

Alternatively, it is claimed dutiable under Par. 501 or Par. 502, either directly or by similitude, according to the sugar test and content.

At the trial of the case counsel for the plaintiff entered into an agreed statement of facts with Government counsel as to what the merchandise contained. First, it was agreed that the grenadine is in chief value of sugar; second, that the sugar from which it was made was granulated and was produced either from cane or beet; and third, that as imported, the sugar was not in a granulated form but was in solution. No other evidence was produced.

In brief of counsel for the plaintiff the claim stressed is that the merchandise, by virtue of paragraph 1559, is properly dutiable under paragraph 501 as an article in chief value of sugar at the highest rate provided for therein. Thus, but one question is presented in this case, to wit, whether the grenadine at issue is a nonenumerated article in chief value of sugar, dutiable under paragraph 501 by virtue of the highest rate clause in paragraph 1559.

The official papers in the case disclose that the grenadine was assessed with a tax at the rate of $0.005144 per pound under section 403, Sugar Act of 1937, a red-ink notation on the invoice stating "60% sugar c/v."

Counsel for the plaintiff contends that the meaning of the term "sugars" as used in paragraph 501 is clear according to the definition in Schedule 5, Summary of Tariff Information, 1929, which provides in part as follows:

SUGAR

This paragraph embraces refined sugar and raw or unrefined sugar in any form which might be used commercially for the manufacture of refined sugar.

Description and uses.—Pure sugar (sucrose) is a definite chemical compound ($C_{12}H_{22}O_{11}$) derived in commercial quantities from the juices of several plants, such as the cane and beet, and from maple, and palm trees. Sucrose, in varying degrees of purity, is the sugar of commerce to which the tariff relates. * * *

\* \* \* About two-thirds of the domestic consumption is used directly in the household; the remainder, in various forms of manufacturing, e. g., bakers' products, confectionery, condensed milk, soft drinks, canned fruits, and tobacco.

Counsel for the plaintiff argues that as the merchandise is in chief value of granulated sugar from beet or cane, it necessarily means that the component material of chief value is one of the "sugars" named in paragraph 501; that such paragraph includes all sugars, regardless of their polariscopic test; and that as there is no evidence herein of the polariscopic test, the plaintiff is entitled to claim the highest rate, that is, the rate applicable to sugar testing 100 degrees. It is contended that inasmuch as sugar is the component material of chief value, it exceeded in value all the other components used in making grenadine at the time they were in such condition that nothing remained to be done except putting them together to make the article. It is further contended that it is immaterial whether or not the sugar is in granulated form at the time of importation, because in determining component material of chief value, the value of the single component is taken when in the condition originally put into the article at the time when nothing remained to be done except putting the various components together. Therefore, whatever occurred to the sugar after assembly, or what its condition was as imported is immaterial.

Counsel for the plaintiff points out that while paragraph 501 includes all sugars, regardless of polariscopic test, it only covers "all mixtures containing sugar and water testing by the polariscope above 50 sugar degrees," which would exclude a mixture of sugar and water testing by the polariscope below 50 sugar degrees. Counsel therefore contends that as the stipulation of fact establishes that the imported grenadine is in chief value of one of the "sugars" in paragraph 501 and is not in chief value of a mixture containing sugar and water, it is not necessary to show the polariscopic test, as it is only in the case of mixtures containing sugar and water that the polariscopic test must be shown to establish that it tests over 50 degrees as provided in the paragraph.

Counsel for the plaintiff further contends that since the grenadine in question is in chief value of one of the sugars named in paragraph 501 it is dutiable thereunder by virtue of paragraph 1559.

Counsel for the Government, on the other hand, contends that the grenadine in question is not in chief value of such sugars as are provided for in paragraph 501, as it has not been shown that it is a mixture containing sugar and water which would come under the *eo nomine* provision therefor, and further that it is not dutiable thereunder by virtue of paragraph 1559 for the reason that Congress considered as components of a manufactured article only those materials as are present in the article in the condition of that material as

found in the article, and that under the facts herein there is no sugar, as such, present in the grenadine in its imported condition. It is alternatively contended that even though it were considered that the granulated sugar from which the grenadine was manufactured was the component material of chief value, the plaintiff has not shown the number of sugar degrees by polariscopic test of that sugar; that as paragraph 501 provides for sugars from 1 degree to as many degrees above 75 as sugar can have, and at different rates for each degree above 75, the court cannot presume that the sugar tested 100 degrees, as suggested by counsel for the plaintiff.

Counsel for the Government further contends that the provision in the Sugar Act of 1937 taxing sugar does not require the sucrose content of the sugar to be a test or a condition for the assessment of such tax, and therefore is not helpful to the plaintiff's position.

Paragraph 501 of the Tariff Act of 1930 provides as follows:

PAR. 501. Sugars, tank bottoms, sirups of cane juice, melada, concentrated melada, concrete and concentrated molasses, testing by the polariscope not above seventy-five sugar degrees, and all mixtures containing sugar and water, testing by the polariscope above fifty sugar degrees and not above seventy-five sugar degrees, 1.7125 cents per pound, and for each additional sugar degree shown by the polariscopic test, three hundred and seventy-five ten-thousandths of 1 cent per pound additional, and fractions of a degree in proportion.

Paragraph 502 of the Tariff Act of 1930 provides as follows:

PAR. 502. Molasses and sugar sirups, not specially provided for, testing not above 48 per centum total sugars, one-fourth of 1 cent per gallon; testing above 48 per centum total sugars, two hundred and seventy-five-thousandths of 1 cent additional for each per centum of total sugars and fractions of a per centum in proportion. Molasses not imported to be commercially used for the extraction of sugar or for human consumption, three one-hundredths of 1 cent per pound of total sugars.

The Customs Regulations of 1937, respecting the testing of sugars, provides as follows:

Art. 759. Interpretation of "testing by the polariscope."—The expression "testing by the polariscope * * * sugar degrees", occurring in a tariff act, shall be construed to mean the percentage of sucrose contained in the sugar shown by direct polarimetric estimation.

Art. 760. Total sugars defined.—The expression "total sugars", occurring in the tariff act, shall be construed to mean the sum of the sucrose (Clerget), th raffinose, and the reducing sugars.

Paragraph 1559 of the Tariff Act of 1930 provides as follows:

PAR. 1559. That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; and if any nonenumerated article equally resembles two or more enumerated articles on which different rates of duty are chargeable, there shall be levied on such non-

enumerated article the same rate of duty as is chargeable on the article which it resembles paying the highest rate of duty; and on articles not enumerated, manufactured of two or more materials, the duty shall be assessed at the highest rate at which the same would be chargeable if composed wholly of the component material thereof of chief value; and the words "component material of chief value," wherever used in this Act, shall be held to mean that component material which shall exceed in value any other single component material of the article; and the value of each component material shall be determined by the ascertained value of such material in its condition as found in the article. If two or more rates of duty shall be applicable to any imported article, it shall be subject to duty at the highest of such rates.

The Sugar Act of 1937, to which counsel for the plaintiff refers, provides in part as follows (50 Stat. 912, Part 1):

### TITLE IV EXCISE TAXES WITH RESPECT TO SUGAR

#### DEFINITIONS

SEC. 401. For the purposes of this title—

*       *       *       *       *       *       *

(b) The term "manufactured sugar" means any sugar derived from sugar beets or sugarcane, which is not to be, and which shall not be, further refined or otherwise improved in quality; except sugar in liquid form which contains nonsugar solids (excluding any foreign substance that may have been added) equal to more than 6 per centum of the total soluble solids, and except also sirup of cane juice produced from sugarcane grown in continental United States.

The grades or types of sugar within the meaning of this definition shall include, but shall not be limited to, granulated sugar, lump sugar, cube sugar, powdered sugar, sugar in the form of blocks, cones, or molded shapes, confectioners' sugar, washed sugar, centrifugal sugar, clarified sugar, turbinado sugar, plantation white sugar, muscovado sugar, refiners' soft sugar, invert sugar mush, raw sugar, sirups, molasses, and sugar mixtures.

(c) The term "total sugars" means the total amount of the sucrose (Clerget) and of the reducing or invert sugars. The total sugars contained in any grade or type of manufactured sugar shall be ascertained in the manner prescribed in paragraphs 758, 759, 762, and 763 of the United States Customs Regulations (1931 edition).

*       *       *       *       *       *       *

SEC. 403. (a) In addition to any other tax or duty imposed by law, there shall be imposed, under such regulations as the Commissioner of Customs shall prescribe, with the approval of the Secretary of the Treasury, a tax upon articles imported or brought into the United States as follows:

(1) On all manufactured sugar testing by the polariscope ninety-two sugar degrees, 0.465 cent per pound, and for each additional sugar degrees shown by the polariscopic test, 0.00875 cent per pound additional, and fractions of a degree in proportion;

(2) On all manufactured sugar testing by the polariscope less than ninety-two sugar degrees 0.5144 cent per pound of the total sugars therein;

(3) On all articles composed in chief value of manufactured sugar, 0.5144 cent per pound of the total sugars therein.

This court has had before it the proper classification of grenadine many times over a period of years. The claim of plaintiff that grenadine is dutiable under the provisions of paragraph 501, *supra*, by

virtue of paragraph 1559, at the highest rate provided therein, as being in chief value of sugar, was overruled in the case of *Cresca Co., Inc., et al.* v. *United States*, 71 Treas. Dec. 953, T. D. 49027. There, the plaintiff contended that evidence to establish that pure sugar, either cane or beet, tests by the polariscope 100 degrees, was sufficient to hold that sugar substances, such as are provided for in paragraph 501, are the component materials of chief value. Also, the court pointed out that in order to successfully invoke the mixed-material clause in the classification of grenadine, it is necessary to show the chief value of the component materials at such time that nothing remains to be done except to put them together. The court was of the opinion that sugar was not one of the materials as the evidence showed that the grenadine there in question was composed of sirup of sugar, coloring matter consisting of tartaric or citric acid, and grenadine flavoring material, and there was no evidence as to the value of the sirup of sugar, or of its sugar content at the time it was ready for combination. No appeal was taken in that case.

In the case of *Mouquin, Inc.* v. *United States*, 67 Treas. Dec. 1220, Abstract 30673, the merchandise consisted of grenadine sirup composed of a sirup to which citric and tartaric acid or vegetable flavoring had been added and containing no alcohol. The merchandise was claimed dutiable under paragraph 501 at the appropriate rate according to the polariscopic test, or at the appropriate rate under paragraph 502, according to the sugar content, as a sugar sirup, or at the appropriate rate according to the component material of chief value. At the trial therein it was established that in a 100-liter lot of the grenadine sirup, 99 liters would consist of a sirup of sugar containing 90 kilos of pure sugar, a liter of grenadine flavoring extract, and a negligible quantity of coloring matter. It was further established that the cost of pure sugar was 324 francs, the grenadine flavoring extract 10 francs, and the coloring material 10 francs, thus showing that the sugar in the material greatly exceeded the other ingredients in value.

The contention of the plaintiff in that case was that the grenadine was dutiable under paragraph 501 because paragraph 1559 expressly provides that articles not enumerated, manufactured of two or more materials, shall be assessed with duty at the highest rate at which the same would be chargeable if composed wholly of the component material of chief value.

The trial court pointed out that in paragraph 501 sugars are expressly made dutiable at a certain rate per pound, providing they test by the polariscope not above 75 sugar degrees; that a material testing above 75 sugar degrees by such test is therefore expressly excluded from duty at such rate; and that the evidence failed to establish whether or not the grenadine tested by the polariscope not above 75 sugar degrees. It was held that when the statute expressly

prescribes a duty for sugar in a certain condition, in order to apply the highest rate provision in the mixed-material clause, there must be proof in the record that the merchandise in chief value of sugar comes within the terms of the provision as to its polariscopic test for sugar degrees.

Upon appeal to the Court of Customs and Patent Appeals (*Mouquin, Inc.* v. *United States*, 23 C. C. P. A. 196, T. D. 48050), the decision of the lower court was affirmed. Before the appellate court the appellant contended, not that the grenadine involved was sugar or anything specified in paragraph 501, or that it is anywhere else enumerated in the act, but that it was in fact a nonenumerated, manufactured article, and that it is required under the provisions of paragraph 1559 that when a nonenumerated manufactured article made of two or more materials is imported, it shall be assessed with duty at the highest rate at which the same would be chargeable if composed wholly of the component material of chief value; and that as the grenadine there at issue was composed in chief value of sugar, it was dutiable in accordance with the terms of paragraph 501. The appellate court stated:

This court had merchandise like that at bar before it when it considered *Cresca Co. (Inc.)* v. *United States*, 15 Ct. Cust. Appls. 105, T. D. 42185, and *Cresca Co. (Inc.) et al.* v. *United States*, 17 C. C. P. A. (Customs) 83, T. D. 43376.

In the first *Cresca* case the question was whether or not the grenadine syrup there at bar should have been classified under paragraph 501, Tariff Act of 1922, as such a mixture of sugar and water as was provided for in the paragraph and whether it met the requirements of the same. The court held that it was dutiable under paragraph 501 since, upon that record, the mixture tested by the polariscope above 50 sugar degrees.

Appellant in the instant case does not contend that his merchandise is a mixture of sugar and water or that it comes directly under paragraph 501, but that duty should be assessed under paragraph 501 by virtue of the requirements of paragraphs 1460 and 1559, respectively [Tariff Acts of 1922 and 1930, respectively].

In the second *Cresca* case the issue was whether or not grenadine testing less than 50 sugar degrees was a mixture containing sugar and water provided for in paragraph 501. No claim was made with reference to the applicability of paragraph 1460. This court held that the grenadine was a nonenumerated manufactured article for reasons which need not be discussed here.

In *United States* v. *Wakem & McLaughlin*, 6 Ct. Cust. Appls. 385, T. D. 35923, the court held that grenadine syrup was a nonenumerated manufactured article and not a fruit syrup.

The importer relies largely upon the case of *Savannah Sugar Refining Corp.* v. *United States*, 20 C. C. P. A. (Customs) 272, T. D. 46061, wherein it was held that a mixture of sugar and water, with a slight percentage of formaldehyde, was dutiable as sugar by virtue of the mixed materials clause. In that case, sugar was mixed with water. In the instant case, some kind of "syrup of sugar" was mixed with two other ingredients. So, it would appear that the question at bar on this record presents considerable novelty.

\*      \*      \*      \*      \*      \*      \*

The sole question presented is: Does the record show that the component material of chief value in the grenadine at bar is any of the articles mentioned in

paragraph 501? Assuming without deciding that the importation should be classified in accordance with appellant's contention, if it has shown the component material of chief value to be provided for in said paragraph 501, we think appellant has failed to make the required proof. * * * The United States analyst found that by testing by the polariscope the *grenadine* contained less than 50 sugar degrees. This is not proof that the "syrup of sugar", which, according to the statement of appellant's witness, went into the grenadine, contained sugar such as is provided for under the first part of paragraph 501, nor does this show that, when tested by the polariscope, it was such a mixture of sugar and water containing above 50 sugar degrees under the second part of paragraph 501. We do not mean here to intimate that this record shows that the "syrup of sugar" which went into the grenadine responds to the term "all mixtures containing sugar and water" as provided for in the paragraph.

Appellant contends here that it has shown that sugar was the most costly ingredient in the grenadine and that the mandatory provisions of paragraphs 1460 and 1559, respectively, should be applied. The difficulty with appellant's contention is that it has not shown that sugar or sugar substances such as are provided for in paragraph 501 are the component materials of chief value. On this phase of the case, appellant stresses the particular applicability of the closing clause of paragraph 1460 which is as follows:

> and the value of each component material shall be determined by the ascertained value of such material in its condition as found in the article.

For the reasons stated above, we conclude that the judgment of the United States Customs Court should be, and it is, *affirmed*. [Italics quoted.]

In the case of *Schenley Import Corp.* v. *United States*, 16 Cust. Ct. 274, Abstract 51084, the merchandise also consisted of grenadine upon which the collector assessed duty at 20 per centum ad valorem under paragraph 1558, and in addition thereto, a tax of $0.5144 per pound under the provisions of the Sugar Act of 1937 (T. D. 49160), as articles in chief value of manufactured sugar. No evidence was produced to substantiate any of the claims made, but the claims particularly relied upon by the plaintiff were that the merchandise was dutiable under paragraph 501 or 502, either directly or by similitude, according to the sugar test and content.

Plaintiff's counsel in that case contended that the primary rate should be the rate applicable under paragraph 501, as sugar, because of the component-of-chief-value clause in paragraph 1559, directing that articles not enumerated, which are in chief value, or made of two or more materials, shall pay the same rate of duty as if made wholly of the component of chief value. Counsel for plaintiff there argued that the court had before it everything necessary for a determination, the only thing lacking to enable it to determine the exact amount of duty being the polariscopic amount of sugar used to make the commodity, but that, being a food product, it was reasonable to assume that highly refined sugar was used, and that the importer would be satisfied with a judgment based on 100-degree test sugar, which is the highest rate the grenadine could take if the court were to sustain the legal proposition involved. The additional tax upon

sugar was not contested and all other claims except that under paragraph 501 were abandoned. The court overruled the contentions of the plaintiff, stating:

The notations of the appraiser on the invoice show that the merchandise consists of 65 percent sugar, and that 11 pounds equals 1 gallon. The invoice papers also show that the sugar content cost 7,867.10 francs and the other ingredients 5,906.25 francs. There is no evidence that any polariscopic tests were made of the merchandise to determine the sugar degrees present in the mixture or that any tests were taken to determine the total sugars present.

\* . \* \* \* \* \* \*

In view of the court's holding in the *Mouquin* case, *supra,* we are of the opinion that the invoice and entry papers fail to disclose that the component materials of chief value of the grenadine in question consist of such sugars or sugar substances as are provided for in paragraph 501. Nor do we think that the plaintiff's willingness to accept the rate applicable to a 100-degree test sugar would aid in bringing the merchandise within the classification of the sugars covered by paragraph 501.

In the case of *Savannah Sugar Refining Co.* v. *United States,* 61 Treas. Dec. 401, T. D. 45477, the merchandise was a sugar sirup assessed for duty as sugar at 1.7125 cents per pound under paragraph 501 of the Tariff Act of 1930 by virtue of the provisions of paragraph 1559 and the reciprocity treaty with Cuba, 19 U. S. C. §§ 124, 125. It was claimed dutiable at one-fourth of 1 cent per gallon as "sugar sirups, not specially provided for," under paragraph 502, or at 20 per centum ad valorem under paragraph 1558. It seems that the importing company, in order to escape the United States sugar duty, sought to pay duty upon the basis of a sugar sirup, and to that end had directed the preparation of the importation by mixing raw brown sugar with a certain percentage of water at a temperature of 180 degrees and adding a gallon of 40 per centum formaldehyde solution as a preservative. Neither the water nor the formaldehyde was of value as both passed off in evaporation. The importation was used in the same manner as raw sugar.

Upon reviewing the legislative history of the sugar paragraphs, the court was of the opinion that Congress provided—

\* \* \* for a sugar (sucrose) group and a total sugar (molasses and sirup) group, \* \* \* that it was the intent of Congress to tax both groups according to the sugar content: First, on the basis of the sucrose as indicated by the polariscopic test, inasmuch as customs regulations had already defined the expression "testing by the polariscope" to mean the percentage of sucrose contained in the sugar shown by direct polarimetric estimation \* \* \* and second, on the basis of the total sugars contained therein.

\* \* \* \* \* \* \*

Congress legislated in full knowledge of this understanding of what is meant by the term "sugar sirup," and we must presume that it intended to use the term "sugar sirups" in the sense in which they had been defined in the judgments of the court of appeals \* \* \*.

The court held that the importation was a mixture of sugar, water, and formaldehyde, and was not a sugar sirup; that it was an article not enumerated, manufactured of two or more materials; and concluded that it was properly assessed at the rate applicable to sugar under paragraph 501 of the Tariff Act of 1930, by virtue of the mixed-material clause under paragraph 1559.

Upon appeal to the Court of Customs and Patent Appeals (*Savannah Sugar Refining Corp.* v. *United States*, 20 C. C. P. A. 272, T. D. 46061), the court pointed out that the polariscopic test showed less than 50 sugar degrees. The court set out in its opinion the sugars embraced in paragraphs 501 and 502 as follows:

It will be observed that paragraph 501, *supra*, makes provision for various articles, the first of which is "Sugars." It, apparently, embraces all sugars and fixes a duty of 1.7125 cents per *pound* upon those testing by the polariscope "not above seventy-five sugar degrees," with an additional duty per *pound* for each additional sugar degree or fraction thereof above 75 sugar degrees. Another article in the same paragraph is—

> all mixtures containing sugar and water, testing by the polariscope above fifty sugar degrees and not above seventy-five sugar degrees.

Any of such mixtures above 50 sugar degrees and not above 75 sugar degrees are assessable at 1.7125 cents per *pound*, and an additional duty is then provided for each additional degree or fraction thereof above 75 degrees.

No specific provision appears to be made in paragraph 501, *supra*, for "mixtures containing sugar and water" testing by the polariscope 50 sugar degrees and under.

Paragraph 502, *supra*, likewise specifically names certain articles, one of which is "sugar sirups, not specially provided for, testing not above 48 per centum total sugars," and provides duty thereon to be assessed per *gallon*.

    *       *       *       *       *       *       *

We think the only really important issue raised in appellant's assignments of error may be stated in a brief question: Is the imported merchandise a sugar sirup within the meaning of paragraph 502, *supra*, and dutiable thereunder at the rate of one-fourth of 1 cent per gallon, either directly or by virtue of the similitude provision of paragraph 1559, of the Tariff Act of 1930?

 *  *  * It was not intended that it should enter into the general commerce of the country in the state in which it was imported.  *  *  * The particular importation involved was  *  *  * mixed with other raw sugars imported in their usual condition.

    *       *       *       *       *       *       *

 *  *  * we are compelled to hold that the evidence in this case does not establish that the mixture of sugar and water with the slight quantity of formaldehyde is definable as sugar sirup according to commercial understanding.  *  *  *

    *       *       *       *       *       *       *

It is to be observed that Congress must have had clearly in mind a distinction between "sirups" and "mixtures containing sugar and water" and provided for them in different paragraphs. Congress also distinguished "sirups of cane, juice, melada" and "sugar sirups," for tariff purposes, the one being named in paragraph 501, *supra*, and the other in paragraph 502, *supra*.

It is of common knowledge, we understand, that each of the articles specified by name in paragraph 501, *supra*, is (unless it be already refined sugars as imported)

transmuted into refined sugar, while those specified in paragraph 502, *supra*, generally are used for other purposes than that of being refined.

\* \* \* It is not a sugar sirup, nor is it similar to a sugar sirup in any tariff sense. \* \* \*

In the case of *United States* v. *Olavarria & Co., Inc.*, 37 C. C. P. A. 40, C. A. D. 417, the merchandise at issue consisted of cane sirup containing sucrose and invert sugar with a flavoring, testing by the polariscope below 50 sugar degrees. It was classified as sugar under paragraph 501, by invoking the mixed-material clause of paragraph 1559, and a finding that the product was not enumerated, manufactured of two or more materials, composed in chief value of sugar. The sole question was whether the sirups there were dutiable as sugar sirups within the purview of paragraph 502.

The evidence disclosed that inverted sugar sirup had been imported from Cuba for many years and sold exclusively to processors of food products; that under a regulation of the Office of Price Administration sugar sirups which had been flavored were not subject to rationing. For that reason, an additional ingredient of from one-eighth to one-sixteenth of an ounce of flavoring per gallon of sirup was added. The official analysis of the importation in that case disclosed that the merchandise was cane sugar sirup, containing sucrose and invert sugars, with a total sugar content of 77 per centum, together with a flavoring, and testing by the polariscope below 50 sugar degrees. The appellate court in its decision stated that paragraph 502 applied to sugar sirups generally used for purposes other than that of being refined, whereas *paragraph 501 applied to articles transmutable into refined sugar*. The court also pointed out that the *Cresca Co. (Inc.)* case (15 Ct. Cust. Appls. 105, T. D. 42185) judicially defined a sirup as "a saturated solution of sugar and water." The court stated:

\* \* \* Therefore, when the Congress formulated the Tariff Act of 1930, the members thereof had before them full knowledge that the term "sugar sirups," employed in paragraph 502 of the Tariff Act of 1922, had been judicially defined as sirups consisting of a saturated solution of sugar in water generally used for purposes other than that of being refined.

The appellate court found that inasmuch as the *eo nomine* statutory designation of "sugar sirups" in paragraph 502 was without limitation, except as to the polarization test, or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation, the term included the form of the article as imported in that case.

In the case of *United States* v. *Rice-Stix Dry Goods Co.*, 19 C. C. P. A. 232, T. D. 45337, the merchandise, atomizers, was composed of colored or decorated glass, metal, rubber, and silk. It was assessed as articles composed wholly or in chief value of glass. The importer claimed

that the atomizers were in chief value of metal. The statements made at the trial that the metal portion was of greater value than the glass was based solely on the prices stated on the invoice, the prices paid by the importer. In rejecting such evidence, the appellate court stated:

This court has repeatedly held that the proper method of determining component material of chief value is to ascertain the costs of the separate parts or component materials to the manufacturer at the time they are ready to be assembled or combined into the completed article. *United States* v. *Mrs. S. Bacharach*, 18 C. C. P. A. 353, T. D. 44612; *Turner & Co. et al.* v. *United States*, 12 Ct. Cust. Appls. 48, T. D. 39997, and cases therein cited.

All the testimony in this case was predicated upon the invoice values, the prices paid by the importer. These prices, of course, include the manufacturer's profit and probably other items of value. There is no evidence of the costs to the manufacturer of the separate parts or components of the involved articles at the time such parts or components were ready to be assembled or combined. Accordingly, we must hold that there is no competent evidence of record to establish the component material of chief value. This being so, the presumption of correctness attending the collector's classification was not overcome and the court below should have overruled the protest..

All that the evidence before the court discloses is that the chief value of the product is sugar, which was originally a granulated sugar, but in its imported condition was in solution. As will be noted, the Sugar Act, *supra*, defines the term "total sugars" to be "the total amount of sucrose (Clerget) and of the reducing or invert sugars." According to the official papers, the total sugars amount to 60 per centum, that is, the sum of the sucrose and the invert sugars in the merchandise is equal to 60 per centum of the value of the product. Testing by the polariscope, according to the customs regulations, *supra*, is performed for the purpose of determining the percentage of sucrose contained in sugar, whereas the total sugars not only include the sucrose but also the reducing or invert sugars as well. Thus it is quite possible that a product in chief value of sugar may not test by the polariscope even 1 sugar degree.

In the case of *Monteverde Rolandelli & Parodi (Inc.)* v. *United States*, 58 Treas. Dec. 223, T. D. 44233, the grenadine there in question showed 53.30 per centum total sugars, but the number of sugar degrees was minus 15.0 by direct polarization, and there was no cane sugar in the product. The grenadine was there held to be a nonenumerated manufactured article. In the Summary of Tariff Information, *supra*, the sugar embraced in paragraph 501 is defined as refined sugar and raw or unrefined sugar in any form which might be used commercially for the manufacture of refined sugar. Such definition would exclude the grenadine here in question. Without the aid of a polarization test, there is nothing to establish whether or not there is any cane sugar in the product. Certainly, there is no showing that it is in chief value of one of the sugars covered by paragraph 501. As stated by the ap-

pellate court in the *Mouquin* case, *supra*, this court is entirely in the dark concerning what particular sugar material was present at the time the ingredients of the imported grenadine were in such condition that nothing remained to be done except putting them together to form the imported merchandise.

For the reasons stated, and following the decisions heretofore cited, it is the holding of this court that the grenadine in question was properly assessed for duty as a nonenumerated manufactured article under the provisions of paragraph 1558. Judgment will therefore be entered in favor of the Government.