UNITED STATES v. JOHNSON & JOHNSON.

(Circuit Court of Appeals, Second Circuit.   March 5, 1907.)

No. 164 (4,077).

CUSTOMS DUTIES—COMPONENT OF CHIEF VALUE—DETERMINATION.

Tariff Act July 24, 1897, c. 11, § 7, 30 Stat. 205 [U. S. Comp. St. 1901, p. 1693], providing that the component material of chief value in imported merchandise shall be determined with reference to the value of the components in their condition as found in the article, means the state which the materials are in when put together, without regard to their value after being advanced to completion; and articles of cotton covered with varnish, in which, before combination, the latter is of less value, should be regarded as composed in chief value of cotton, irrespective of the fact that subsequent labor in applying the varnish may render it the component of chief value in the completed articles.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For decision below see (C. C.) 146 Fed. 148, reversing a decision of the Board of United States General Appraisers (G. A. 6,112; T. D. 26,609), which had affirmed the assessment of duty by the collector of customs at the port of New York.

J. Osgood Nichols, Asst. U. S. Atty.

Hatch & Clute (J. Stuart Tompkins, of counsel), for importers.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

WALLACE, Circuit Judge.   This appeal involves the application of section 7 of the tariff act of 1897 (Act July 24, c. 11, 30 Stat. 205 [U. S. Comp. St. 1901, p. 1693]), which provides that each and every imported article not enumerated in the act shall be assessed for duty at the highest rate at which the same would be chargeable if composed wholly of the component material thereof of chief value, and that the words "component material of chief value" shall be held to be that component material which shall exceed in value any other single component material of the article, and the value of the component material shall be determined by the ascertained value of such material in its condition as found in the article.

The importations were nonenumerated articles composed of a tubular core of cotton (some of them silk), and having superimposed upon the core several coatings of varnish.   The question is, which of the component materials is the one of chief value?   The articles were made in the following manner:   The manufacturer first makes a tubular cotton core of the desired length and diameter; and he then prepares a varnish made of copal gum and linseed oil.   The cotton core is dipped into this varnish, and when the varnish has dried sufficiently the workmen manipulate it by hand to bring the varnish to the required degree of flexibility and smoothness.   These dippings and manipulations by the workmen are repeated several times until the varnish so tempered as to give the superimposed coatings the proper degree of stiffness and flexibility.   Then the varnish is polished by the workmen by hand with pumice stone and cloth, in order to give it

finally the proper degree of smoothness. According to the evidence the value of the cotton cores thus used, which exceeds the value of the silk cores, is 3.86 francs per hundred. The value of the varnish, including that of the labor bestowed in combining the oil and the copa, is 1.75 francs. The value of the labor of manipulating the several coatings so as to make the final and completed coating is 15 francs.

The importers insist that because the value of the varnish, after it has been finally applied to the articles, is 16.75 francs, the varnish is the component of chief value. The Circuit Court sustained this contention.

Whether the component materials be regarded as cotton and varnish, or as cotton, copal, and oil, we are of the opinion that the cotton is to be regarded as the component material of chief value. It is true that the value of the material is to be ascertained in its condition as found in the article; but this means in the state in which it is found when it is originally put into the article, and not in the state to which it may be brought after it has been put there by the labor and skill subsequently bestowed upon it. The material may have been, and generally has been, advanced from its crude state by labor and skill to a condition in which it is fit for use in the article which is to be wholly or in part manufactured from it; and the meaning of the statute is that its value is to be ascertained, not by that of its natural state or its original condition, but by that of its condition when actually used in manufacturing the particular article. Under previous tariff acts it had sometimes been contended that in arriving at the value of the component material the test was to ascertain its value in the state in which the manufacturer had received it and before any enhancement derived from any work or labor expended upon it in bringing it to a condition fit for use in the particular article manufactured; but in Seeberger v. Hardy, 150 U. S. 420, 14 Sup. Ct. 170, 37 L. Ed. 1129, the court held that the value of the respective component materials was to be ascertained at the time "when they were in such condition that nothing remained to be done upon them except putting them together" to make the particular article. The words "in the condition as found in the article" were doubtless used by Congress to embody this construction in the statute. This interpretation of the statute is consistent with that placed upon it by this court in United States v. Hoeninghaus, 137 Fed. 478, 69 C. C. A. 626, where we held that the value of the component material as found in the article included the cost of bringing the material to the proper shape for its use in the specific article, which in that case included the cost of warping the silk, a process preliminary to the weaving process.

The judgment is reversed.