(C. D. 687)

ADOLF GOLDMARK & SONS CORP. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided September 21, 1942)

Sharretts & Hillis (*Arthur L. Tallman* of counsel) for the plaintiffs.
*Paul P. Rao*, Assistant Attorney General (*Joseph F. Donohue*, special attorney)', for the defendant.

Before WALKER, CLINE, and KEEFE, Judges

WALKER, Judge: This suit against the United States arises out of the action of the collector of customs at the port of New York imposing a tax or duty under the provisions of the Sugar Act of 1937 (Ch. 898, title IV, sec. 403, 50 Stat. 913) at the rate of 0.5144 cent per pound on the total sugar content of certain marmalade imported from England. The pertinent portion of that statute reads as follows:

(a) In addition to any other tax or duty imposed by law, there shall be imposed, under such regulations as the Commissioner of Customs shall prescribe, with the approval of the Secretary of the Treasury, a tax upon articles imported or brought into the United States as follows:

     \*       \*       \*       \*       \*       \*       \*

(3) On all articles composed in chief value of manufactured sugar 0.5144 cent per pound of the total sugars therein.

The protest claim is that the marmalade in issue is not composed in chief value of sugar, and is, therefore, not subject to the said tax.

The facts are not in dispute, and from the evidence offered it appears that the marmalade involved was manufactured in England with the use of imported sugar, on which a British customs duty had been levied and paid. When the marmalade was exported from England 93 per centum of the duties so paid were refunded to the manufacturer. Reference to exhibit 2, a report of a Treasury attaché, offered in evidence by the plaintiffs and received without objection, shows that for a batch of 124 pounds of marmalade the relative costs of the components up to the time of their combination to complete the marmalade were as follows:

Sugar 13s. 5½d.
Fruit 7s. 9½d.

The cost of the sugar as listed above includes 8s. 2½d. British import duty. It will therefore be seen that if the drawback ultimately paid to the manufacturer by the British Government be deducted from the cost of the sugar, the component material of chief value is the fruit, and the marmalade is not taxable under the provisions of the Sugar Act of 1937 quoted above. If, however, the drawback is not deducted in determining the component material of chief value of the marmalade, then sugar is the component material of chief value and the marmalade is dutiable as assessed.

In the Sugar Act of 1937, *supra*, it is provided that—

Such tax shall be levied, assessed, collected, and paid in the same manner as a duty imposed by the Tariff Act of 1930, and shall be treated for the purposes of all provisions of law relating to the customs revenue as a duty imposed by such Act \* \* \*.

With reference to the words "component material of chief value" paragraph 1559 of the Tariff Act of 1930 provides—

the words "component material of chief value," wherever used in this Act, shall be held to mean that component material which shall exceed in value any other single component material of the article; and the value of each component material shall be determined by the ascertained value of such material in its condition as found in the article.

This provision has appeared in numerous tariff acts and has been the subject of a number of decisions by this and our appellate tribunal, and the rule to be derived from such cases is succinctly expressed by the Court of Customs and Patent Appeals in the following statement in its opinion in *United States* v. *Rice-Stix Dry Goods Co.*, 19 C. C. P. A. 232, T. D. 45337: ·

This court has repeatedly held that the proper method of determining component material of chief value is to ascertain the costs of the separate parts or component materials to the manufacturer at the time they are ready to be assembled or combined into the completed article. *United States* v. *Mrs. S. Bacharach*, 18 C. C. P. A. (Customs) 353, T. D. 44612; *Turner & Co. et al.* v. *United States*, 12 Ct. Cust. Appls. 48, T. D. 39997, and cases therein cited.

While all of the words contained in the foregoing statement are important, we think that those which are to be emphasized in connection with the issue at bar are the words—

at the time they are ready to be assembled or combined into the completed article:

At the time the sugar in issue was ready to be combined with the fruit into the completed marmalade its cost included the British import duty levied and paid thereon. It was a subsequent act, performed in connection with the completed marmalade—to wit, exportation—which gave rise to the refund of 93 per centum of such duties paid. In an accounting sense, it might be said that the *final net cost* of the sugar to the manufacturer was thereby reduced, but to hold in this case that the final net cost controls would be to disregard entirely that portion of the rule stated above which relates to the time element.

Research of the adjudicated cases indicates that subsequent acts performed after the combination of the component materials can have no effect of increasing the value of such components for the purpose of determining the component material of chief value within the meaning of the term as used in the act.

Thus, in *United States* v. *Johnson & Johnson*, 154 Fed. 39, where the component materials of an article were a cotton core and varnish, and subsequent to the joining of the varnish to the cotton core it was subjected to labor processes to give it flexibility and smoothness, it was held that the cost of such subsequent processes formed no part of the cost of the varnish for the purpose of determining the component material of chief value, the court saying:

* * *. It is true that the value of the material is to be ascertained in its condition as found in the article; but this means in the state in which it is found when it is originally put into the article, and not in the state to which it may be brought after it has been put there by the labor and skill subsequently bestowed upon it. The material may have been and generally has been advanced from its crude state by labor and skill to a condition in which it is fit for use in the article which is to be wholly or in part manufactured from it; and the meaning of the statute is that its value is to be ascertained not by that of its natural state or its original condition, but by that of its condition when actually used in manufacturing the particular article.

See also *United States* v. *Fondeville & Von Iderstine*, 7 Ct. Cust. Appls. 135, T. D. 36457.

To be sure, all such cases refer to instances wherein the component material in question had been physically changed after combination. We think, however, that the rule is equally applicable to instances wherein the change after combination is intangible, such as the present case. It is the *value* with which we are treating and not the method by which that value changed. Furthermore, while it may be said also that such cases deal with instances wherein the change after combination increased the value of the component, in the present case the change decreased the value, i. e., reduced the cost, nevertheless, the rule is one which of its nature ought to work both ways.

The protest claim is therefore overruled, and judgment will issue accordingly.