LA MANNA, AZEMA & FARNAN, INC. *v.* UNITED STATES (No. 4660)[1]

---

[1] C. A. D. 461.

United States Court of Customs and Patent Appeals, June 26, 1951.

*John D. Rode* for appellant.

*David N. Edelstein*, Assistant Attorney General (*Richard F. Weeks, Richard E. Fitz Gibbon*, and *Alfred A. Taylor, Jr.*, special attorneys, of counsel), for the United States.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This appeal is from the judgment of the United States Customs Court, C. D. 1248, overruling appellant's protest claiming that certain imported grenadine was properly dutiable under paragraph 501 of the Tariff Act of 1930 at the highest rate therein provided, by virtue of paragraph 1559, as an imported article not enumerated in the act, manufactured of two or more materials, composed in chief value of sugar.

The merchandise was imported from France in January of 1939 and was assessed with duty by the Collector of Customs at the port of New York at the rate of 20 per centum ad valorem as a nonenumerated manufactured article under paragraph 1558. An excise tax of 0.5144 cent per pound of total sugars was also levied by the collector in accordance with the provisions of the Sugar Act of 1937. Against that levy, appellant filed no protest.

Counsel for appellant at the time of the trial was unable to get further information from Europe as to what degree the sugar tested and the issues were therefore submitted for decision upon a stipulation whereby it was agreed as a matter of fact that the merchandise consisted of grenadine or grenadine syrup in chief value of sugar; that the sugar from which the merchandise was made was granulated and produced from either beet or cane; and that the sugar as imported was not granulated but was in solution form.

The provisions of paragraph 501, 1558, and 1559, so far as pertinent, read:

Par. 501. Sugars, tank bottoms, sirups of cane juice, melada, concentrated melada, concrete and concentrated molasses, testing by the polariscope [1] not above seventy-five sugar degrees, and all mixtures containing sugar and water, testing by the polariscope above fifty sugar degrees and not above seventy-five sugar degrees, 1.7125 cents per pound, and for each additional sugar degree shown by the polariscopic test, three hundred and seventy-five ten-thousandths. of 1 cent per pound additional, and fractions of a degree in proportion.

Par. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

Par. 1559. * * * on articles not enumerated, manufactured of two or more materials, the duty shall be assessed at the highest rate at which the same would be chargeable if composed wholly of the component material thereof of chief value; and the words "component material of chief value," wherever used in this Act, shall be held to mean that component material which shall exceed in value any other single component material of the article; and the value of each component material shall be determined by the ascertained value of such material in its condition as found in the article. * * *

Each of the articles specified by name in paragraph 501 is transmuted upon importation into refined sugar, unless the article had already been refined prior to importation, and the refined sugar is approximately 100 per centum pure sucrose.[3] "The sugar commonly bought for table use is refined sugar. It may be marketed in several physical forms, as granulated, load, lump, or domino, but the substance is the same." Tariff Information Surveys, United States Commission, E–1, 1921, at page 34 under the heading, "Refined Sugar—Description and Uses."

Appellant does not claim that the grenadine involved is sugar or anything specified in paragraph 501, or that it is anywhere else enumerated in the act, but appellant does claim that the merchandise is in fact a nonenumerated, manufactured article, and that the above-quoted provisions of paragraph 1559 require that when a nonenumerated manufactured article made of two or more materials is imported, duty shall be assessed at the highest rate at which the same

---

[1] As stated in the Tariff Information Surveys, United States Tariff Commission, 1921, E–1, page 9:

In the polariscopic test the sample is dissolved and placed in the tube of a polariscope. The angle through which a beam of light passing through the solution is rotated determines the purity. * * *

[3] *Savannah Sugar Refining Corp.* v. *United States*, 20 C. C. P. A. (Customs) 272, 274, 280, T. D. 46061.

would be chargeable if composed wholly of the component material of chief value; that in this instance, sugar is the component material of chief value, and that the merchandise, therefore, is indirectly dutiable in accordance with the terms of paragraph 501.

Appellant also claims that in accordance with the stipulation the sugar provided for under the first article of paragraph 501 is the sugar of which the imported merchandise is in chief value and hence it cannot be in chief value of a mixture containing sugar and water as otherwise provided for in another article of the same paragraph.

No evidence other than that contained in the official papers and the stipulation of the parties was offered. That stipulation, for a precise understanding of the issues submitted, should be amplified by the following excerpt from the record; Mr. Rode representing the importer, and Mr. Fitz Gibbon the Government:

Mr. Fitz Gibbon: If the court please, Mr. Rode said that the imported sugar was not present in the article. Sugar is present in the article as imported but not in a granulated condition.

Mr. Rode: Well, that is a statement that Mr. Fitz Gibbon wants in the record. Perhaps I didn't give it the way he wishes it to be, so if he will make it, I will agree to it. It is nothing that I wanted in the record, but it is something the Government wishes in there. If you want to put it in your way, I will accept it.

Judge Johnson: (To the reporter) Read the stipulation as it now stands.

(The reporter read the stipulation)

Mr. Rode: All right. Amend that to read "that in its condition as imported the sugar is no longer in the form of granulated sugar, being now, or being then in solution."

Mr. Fitz Gibbon: Then it can't be in chief value of granulated sugar as imported. I have no objection to stipulating that the merchandise is in chief value of sugar, that the sugar from which it was made was granulated sugar from either beet or cane. However, as imported, the sugar is not in a granulated form but is in solution.

Mr. Rode: I think that is the same thing and I will agree to it.

Judge Johnson: Does the Government agree with that stipulation?

Mr. Fitz Gibbon: I stated it myself.

It is immaterial, appellant contends, that the sugar was no longer in granulated form, but was in solution, because in determining the component material of chief value, it is the value of the single component in the state in which it was found when it was originally put into the article at the time when nothing remained to be done except putting the various components together.[4]

The composition of the grenadine here in issue was thus defined for the record by Government counsel:

Mr. Fitz Gibbon: * * * I have no objection to stipulating that the merchandise is in chief value of sugar, that the sugar from which it was made was granulated sugar from either beet or cane. However, as imported, the sugar is not in a granulated form but is in solution.

[4] *Seeberger* v. *Hardy*, 150 U. S. 420; *Adolph Goldmark & Sons Corp.* v. *United States*, 31 C. C. P. A. (Customs) 6, C. A. D. 241; *United States* v. *Johnson & Johnson*, 154 Fed. 39; *Cresca Co., Inc., et al.* v. *United States*, 71 Treas. Dec. 953, T. D. 49027.

48

Measured by the accepted standard that all of the facts vital to the interests on appeal have been first developed in the record of the trial court, the foregoing stipulation, which is submitted here as proof of that accomplishment, leaves much to be desired. However, in determining the issue thus presented this court is not at liberty to infuse private notions or prepossessions into the record by surmise since the predominant question here has been before our court and the Customs Court for determination on various occasions.

The composition of imported grenadine was held by this court to be established on the testimony of three qualified witnesses familiar with the process of manufacture to the effect that grenadine "is always made according to a fixed formula, which is, for 100 liters [of grenadine], 80 kilograms of sugar, 50 liters of water, and 3 per cent coloring matter and citric acid" and that "This testimony as to the composition of grenadine accords with one definition of grenadine given in the dictionaries." *United States* v. *Wakem & McLaughlin*, 6 Ct. Cust. Appls. 385, 386.

The grenadine just described was conceded to be the same kind of merchandise that was involved in *Cresca Co. Inc.* v. *United States*, 49 Treas. Dec. 1297, Abstract No. 174, affirmed, 15 Ct. Cust. Appls. 105, T. D. 42185, where our court held on appeal that the imported grenadine was properly dutiable under paragraph 501 of the Tariff Act of 1922, and not as a nonenumerated manufactured article. There it was definitely established that the involved grenadine was in chief value of a mixture containing sugar and water testing above 50 sugar degrees, one of the sugar substances specified in paragraph 501.

Certain language inadvertently used in the opinion of our court in the *Cresca* case, *supra*, has no controlling significance on the issue here. That language has been exorcised by our court [5] and by the United States Customs Court,[6] but the *Cresca* case itself has been otherwise frequently followed.

That case was cited, for example, in *Mouquin, Inc.* v. *United States*, 23 C. C. P. A. (Customs) 196, 199, T. D. 48050, where the court had no occasion to disapprove or follow the rule for the reason that the appellant wholly failed to sustain the burden of proof as to its claim that the imported grenadine was in chief value of sugar or was one of the sugar substances specified in paragraph 501 of the Act of 1930. To the same effect, see *Schenley Import Corp.* v. *United States*, 16 Cust. Ct. 274, Abstract 51084.

The trial court in the instant case held there was no showing in the record that the component material of chief value in the imported

[5] *United States* v. *Olavarria & Co., Inc.*, 37 C. C. P. A. (Customs) 40, C. A. D. 417.

[6] *Mouquin, (Inc.)* v. *United States*, 60 Treas. Dec. 415, T. D. 45114.

grenadine was one of the sugars provided for in paragraph 501 and that the stipulated facts were wholly insufficient to effect that result.

That court in reaching its conclusion had recourse to section 403 (a) (3) of the Sugar Act of 1937 and relying on the definition of "total sugars" defined in article 760 of Customs Regulations of 1937 held, among other things, that "According to the official papers, the total sugars amounted to 60 per centum, that is, the sum of the sucrose and the invert sugars in the merchandise is equal to 60 per centum of the value of the product." Appellant's vigorous contention that "There is no such statement in the official papers, but merely a red ink notation on the invoice '60% sugar c/v'," has not been challenged nor refuted by the Government.

Moreover, counsel for the Government concede in their brief with respect to the Sugar Act of 1937 that: "This statute levies an excise on all articles composed in chief value of manufactured sugar." On that point they summarize their position as follows:

The Collector has assessed a duty on this grenadine on the theory that it is an article of chief value of manufactured sugar, and has refused to assess it with the customs duty appropriate for an article of chief value of sugar testing by the polariscope not above 75 sugar degrees, or appropriate for all mixtures of sugar and water testing by the polariscope not above 75 sugar degrees, etc.

At first blush this gives us pause. However it is at once apparent that the application of the two statutes cannot be measured by the same yardstick. The Sugar Act section is broad in scope. The Tariff Act paragraph is narrow. That which is taxable with the excise may be properly dutiable, not under paragraph 501, but under paragraph 502 or some other paragraph.

A statement attached to the invoice was filed pursuant to the provisions of the Sugar Act of 1937, as to the commodities composed in substantial part of the manufactured sugar, which statement alleges that the manufactured sugar used was "granulated sugar from beet"; that the total cost of producing one manufacturing lot or batch of 144 kilos was 546.85 francs; that flavoring material was supplied at a total cost of 157 francs; and that coloring material was likewise used at an additional cost of 11 francs.

The Government frankly admits here "that at a point prior to importation granulated sugar was used as an ingredient in the final product, grenadine," and that "Of all the materials used to make the imported merchandise, the granulated sugar was of the greatest value." It would seem to follow, therefore, under the authorities hereinbefore cited, that the Government's contention that since the sugar in the imported grenadine was not in granulated form, but was in solution, the grenadine was excluded from the provisions of paragraph 501, under the mixed materials clause of 1559, is without merit.

In support of that conclusion it is noted the Government here has nowise controverted the fact that the court in the *Cresca* case, *supra,*

squarely held the grenadine there in issue was a solution of which sugar was a component material of chief value; and that grenadine so constituted was properly classified and held to be dutiable by the Customs Court, Abstract No. 174, under paragraph 501 of the Tariff Act of 1922 as "a mixture containing sugar and water testing by the polariscope above 50 sugar degrees but not above 75 sugar degrees." What the Government does contend for here is set forth in the following excerpt from its brief:

Since the Tariff Act of 1909, with one exception, the courts have held that grenadine is properly dutiable as an unenumerated manufactured article. The case of *Cresca Co. (Inc.)* v. *United States*, 15 Ct. Cust. Appls. 105, T. D. 42185, is the exception. * * * *This case has not been followed administratively nor judicially and has, in fact, been overruled by several subsequent decisions involving the same issue.* * * * (Italics supplied.)

The truth of the matter is that the *Cresca* case, for example, was cited and its procedure was administratively applied by the Government and by this court in the case of *Savannah Sugar Refining Corp.* v. *United States, supra.* There the court held that merchandise consisting of a mixture or solution of sugar and water, with a small quantity of formaldehyde, sugar being the component material of chief value of said mixture, was properly assessed with duty at the rate applicable to sugar under paragraph 501 of the Tariff Act of 1930, by virtue of the mixed-materials clause in paragraph 1559 thereof.

The *Savannah Sugar Refining Corp.* case, it may be noted, is the leading case on the subject of imported sugar and was written by our present Chief Judge Garrett. A petition for a writ of certiorari in that case was denied by the Supreme Court of the United States and reported at 288 U. S. 615.

In reality the only authority advanced by the Government in support of its contention that the *Cresca* case has not been judicially followed "and has, in fact, been overruled by several subsequent decisions involving the same issue". is certain dictum quoted by Government counsel from the opinion of the lower court in *Mouquin (Inc.)* v. *United States*, 60 Treas. Dec. 415, T. D. 45114. There the Customs Court undertook, unsuccessfully, to overrule, in their entirety, all of the holdings of our court in the *Cresca* case.

Admittedly, the factual situation in the *Mouquin* case, *supra*, both in the court below and on appeal to this court, differed from the factual situation presented by the record in the instant appeal. The same is true of the *Schenley* case, *supra*, and another case of *Cresca Co., Inc., et al.* v. *United States*, 71 Treas. Dec. 953, T. D. 49027; two other cases of the court below also relied upon by the Government here in support of its position. In the absence, therefore, of any proper authority or logical reason submitted by the Government, we find no occasion in the present appeal to overrule the doctrine of the original *Cresca* case.

For the reasons stated, the judgment of the United States Customs Court is *reversed* and the case *remanded* for further proceedings not inconsistent herewith.

JOHNSON, Judge, concurring.

I concur in the result reached in this case and in the basic reasoning used to reach that result but submit that the case of *Cresca Co. (Inc.)* v. *United States*, 15 Ct. Cust. Appls. 105, T. D. 42185, cannot furnish the basis or rule for either the result or the reasoning.

The contention of the importer that the merchandise should be classified under paragraph 501 of the Tariff Act of 1930, which was accepted by the majority, is based upon the mixed materials provision in paragraph 1559 of the same act. It is only by reason of this mixed materials provision that classification under paragraph 501 is possible.

The *Cresca* case, *supra*, did not involve classification under the mixed materials clause. In that case grenadine containing 71 75/100 per centum of sugar, which the court erroneously construed to mean 71 75/100 sugar degrees (as later pointed out in the cases of *United States* v. *Olavarria & Co., Inc.*, 37 C. C. P. A. (Customs) 40, 46, C. A. D. 417, and *Mouquin (Inc.)* v. *United States*, T. D. 45114, 60 Treas. Dec. 415, 417), was held to be dutiable under paragraph 501 stating that the merchandise was:

* * * a mixture containing sugar and water testing by the polariscope above 50 sugar degrees but not above 75 sugar degrees, and therefore dutiable under that part of paragraph 501 of the Tariff Act of 1922 which reads as follows:

> 501. Sugars, * * * sirups of cane juice, * * * and *all mixtures containing sugar and water*, testing by the polariscope above fifty sugar degrees and not above seventy-five sugar degrees, 1 24/100 cents per pound * * *.

Thus in the *Cresca* case a polariscope reading was made on the grenadine in its imported condition and since that polariscope reading was over 50 sugar degrees the merchandise was classified as a mixture of sugar and water under paragraph 501.

There is no contention that the merchandise in the instant case is dutiable under paragraph 501 because it is a "mixture containing sugar and water testing by the polariscope above 50 sugar degrees." Indeed the present controversy might never have arisen had there been a polariscope reading. Although the *Cresca* case might be authority for classifying under paragraph 501 whatever merchandise meets the definition thereof, it is not thought that such an extremely broad "rule" is the true basis of the present decision.

By stipulation the grenadine involved in this appeal was made from granulated sugar from cane or beet. By further stipulation

the merchandise is in chief value of sugar. Paragraph 501 is directed to:

501. Sugars, * * * testing by the polariscope not above seventy-five sugar degrees, * * * 1.7125 cents per pound, and for each additional sugar degree shown by the polariscope test, three hundred and seventy-five ten-thousandths of 1 per cent per pound additional, and fractions of a degree in proportion.

It is clear that there is no lower limit on the polariscope reading of the "sugars" of paragraph 501, and that the polariscope reading is to be used merely in determining the proper duty, which increases with increase in sugar degrees to a maximum at 100 sugar degrees. As noted by this court in the *Cresca* case, *supra*, "sugar degrees" means the percentage of sucrose in the sugar. Since the Government in this case has stipulated that the merchandise at bar was made from a *granulated sugar* from cane or beet, it follows that the sugar ingredient which was mixed with the other components to make the grenadine was not a sirup of sugar or a mixture of sugar and water. The sugar mixed with the water, coloring and citric acid to form the grenadine was *granulated* sugar derived from cane or beet. Since the sugar derived from cane or beet is sucrose, it is clear that the granulated sugar of the stipulation falls within the "sugars" set forth in paragraph 501. Indeed, if the sugar ingredient at the time of mixing was not granulated sugar but was a mixture of sugar and water, then in the absence of a polariscope reading of over 50 sugar degrees on that mixture of sugar and water, the resulting grenadine could not be classified under paragraph 501 because the component of chief value would not fall within the materials enumerated in that paragraph. The numerous cases cited and summarized by the court below illustrate this point.

Since the stipulation specified "granulated" sugar it excluded sugar sirup or a mixture of sugar and water as the original sugar ingredient of this grenadine. For this reason the cases cited by the Customs Court showing the classification of grenadine are inapposite, since none involves a grenadine wherein a granulated sucrose sugar was proved to be the original sugar ingredient.