(C.D. 2376)

KAPLAN PRODUCTS & TEXTILES, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided November 28, 1962)

*John D. Rode* (*Ellsworth F. Qualey* of counsel) for the plaintiff.
*Joseph D. Guilfoyle*, Acting Assistant Attorney General (*Alfred A. Taylor, Jr.*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

FORD, Judge: This case brings before the court for determination the proper classification of certain merchandise described on the invoice as "Yarn Dyed Jacquard Satin Brocade Cloth with metal gold yarn." The imported merchandise was assessed with duty at the rate of 25 cents per pound and 22½ per centum ad valorem under the provision of paragraph 1306 of the Tariff Act of 1930, as modified by the

Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, which provides as follows:

Woven fabrics in the piece, wholly or in chief value of rayon or other synthetic textile, not specially provided for, whether or not Jacquard-figured, valued not over $4 per pound_____ 25¢ per lb. and 22½% ad val.

Plaintiff herein contends said merchandise is properly dutiable at the rate of 15 per centum ad valorem or 20 per centum ad valorem under the provisions of paragraph 385 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, which provide as follows:

Woven fabrics, ribbons, and tassels, made wholly or in chief value of any material provided for in any item 385 of this Part_____ 20% ad val.

Beltings and other articles made wholly or in chief value of tinsel wire, metal thread, lame or lahn, or of tinsel wire, lame or lahn and india rubber, bullions, or metal threads, not specially provided for_____ 15% ad val.

Other alternate claims not having been pressed are deemed abandoned.

The record herein consists of the testimony of one witness called on behalf of plaintiff, seven illustrative exhibits, and the following stipulation entered into by and between counsel for the respective parties:

I offer to stipulate that the imported material is a woven fabric obtained and manufactured in the following manner:

A sheet of transparent cellophane, made from a compound of cellulose and less than 3 one-thousandths of an inch in thickness, is bonded to each side of a sheet of aluminum foil. Thereafter, this laminated article is slit or sliced into narrow widths and in such condition is woven with the rayon yarn to make the imported brocade.

In the imported brocade the aluminum cellophane-laminated strip is of greater value than the rayon yarn.

Mr. Kaplan, president of plaintiff corporation, testified that he distributes and sells textile products to manufacturers specializing in rayon and metallic brocades; that this merchandise is sold primarily for evening shoes, evening bags, and evening dresses for women; that his firm is one of the leading companies dealing in metallic fabrics, handling in excess of one million yards a year; that a metallic fabric is one which has a metallic appearance, by virtue of the presence of metal; that he first entered this field in 1927 and has handled metallic fabrics almost constantly since that time; that he is quite familiar with their characteristics, qualities, uses, and methods of manufacture.

The witness then testified that bullion is a metallic thread made of metal, which is wound around a core of cotton and, usually, silk, or, in some cases, wool, that makes it practical for weaving purposes; that

lame and lahn are the same item, which is a metal produced usually by rolling various thicknesses of metal wire, making it flat, and then slit into given widths which vary, depending upon the fabric, and more often than not are coated with either wax or lacquer; that tinsel wire is an extrusion usually of an oval or circular nature and coated with metal in order to prevent it from tarnishing; that the term "metallic thread" designates any one of the previously defined metallic yarns, twisted or plied with other yarns. A sample of bullion was received as plaintiff's illustrative exhibit 1. Plaintiff's exhibit 2 for identification represents tinsel wire. A sample of lame was received as plaintiff's illustrative exhibit 3.

The witness offered and there was received in evidence as plaintiff's illustrative exhibit 4, a sample, which, although not identical with the imported material, was agreed to be substantially similar to said merchandise. Mr. Kaplan testified that exhibit 4 is composed of rayon and a metallic yarn. A sample of the metallic yarn was received in evidence as illustrative exhibit 5. The witness then testified as to the method of manufacture of the above merchandise and that it was made in different colors. A sample of the brocade made of identical yarn, except for the color on the adhesive holding the yarn together, was received in evidence as plaintiff's illustrative exhibit 6. The witness testified that exhibit 5 is given many names but is basically a cellophane-coated metal yarn; that merchandise, such as exhibit 5, was produced and sold commercially in this country about 1936 or 1937; that the principal use of an article, such as exhibit 5, is to give a metallic effect and that aside from its use in metallic brocades and other similar fabrics, it is used in draperies, carpets, upholstery fabrics, and articles of clothing; that the benefit of this new type of process is that the metal does not tarnish; that an article, such as exhibit 5, is used for all purposes and has supplanted the prior yarns, such as metallic threads, bullion, lame, and tinsel wire. An article from "American Textile Reporter," referred to as a trade paper for the textile industry, was received as plaintiff's collective exhibit 7 for identification.

Mr. Kaplan testified that the difference between lame and the metal in plaintiff's illustrative exhibit 5 is that lame is primarily metal with a very thin coating, whereas the cellophane metal thread contained in plaintiff's illustrative exhibit 5 is metal with primarily a construction of two cellophane surfaces adhering to it; that the purpose of coating the lame is to prevent tarnishing, and the cellophane coating of the metal contained in plaintiff's illustrative exhibit 5 is for the same purpose as well as giving it strength and flexibility for weaving; that, in his opinion, plaintiff's illustrative exhibit 5 is an improved type of lame; that, in his opinion, material which is composed either partly or wholly of either lame or lahn, or bullion, or metallic

yarn, or metallic thread, or tinsel wire is always referred to as metallic, regardless of the value of the metal actually present in the material; that exhibit 5 responds to the name of the yarn today which is cellophane metal and is not referred to by name as lame or lahn.

Based upon the foregoing stipulation and oral testimony, it is the position of plaintiff herein that the imported fabric is properly dutiable at 15 per centum ad valorem under paragraph 385, *supra*, as other articles in chief value of tinsel wire, lame, or lahn. Plaintiff has virtually abandoned its claim under said paragraph 385, *supra*, at 20 per centum ad valorem, by making the following statement in the brief filed on its behalf:

> While the imported brocade is a woven fabric it does not appear to be within the provision for "woven fabrics * * * in chief value of any of the foregoing" since the foregoing refers undoubtedly to the articles previously entered in the paragraph which are 1) tinsel wire, lame or lahn which are required to be in chief value of metal, 2) bullions and metal threads which are required to be wholly or in chief value of tinsel wire, lame or lahn and 3) articles wholly or in chief value of tinsel wire, metal thread, lame or lahn or combinations of these materials with rubber or each other. It is a woven fabric which does not meet the requirements of 1) or 2) and obviously is not a woven fabric of "articles" so that if it is to be classified any where in Paragraph 385 it must be within the provision for articles in chief value of tinsel wire, lame or lahn. That a woven fabric is an article was held in *Hirsch* v. *United States*, 167 F. 309, T.D. 29572.

The classification herein was made under the provisions of paragraph 1306 of the Tariff Act of 1930, as modified, *supra*, which provides for "Woven fabrics in the piece, wholly or in chief value of rayon or other synthetic textile, * * *." It is well established in the field of customs jurisprudence that the classification of the collector is deemed to be correct and that he found every factor necessary to support his classification. *United States* v. *Victoria Gin Co., Inc., W. H. Morton*, 48 CCPA 33, C.A.D. 759. In cases involving classification under a provision for component material in chief value, it is presumed that the collector has determined the component material in chief value. *United States* v. *Mrs. S. Bacharach*, 18 CCPA 353, T.D. 44612. In order to overcome this presumption, plaintiff has a twofold burden of establishing the incorrectness of the classification and the correctness of the claim. In the instant case, it has been stipulated that the involved merchandise is a woven fabric; hence, plaintiff must establish that said fabric is not wholly or in chief value of rayon or other synthetic textile and is not specially provided for.

Under the stipulated facts, it has been agreed that the aluminum cellophane strip is of greater value than the rayon in the imported article. The rules for the determination of the component material of chief value of any article or manufacture enumerated in the tariff act are generally well settled, and, indeed, some are written into the

statute itself, as is to be noted from the following provisions of paragraph 1559 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1954, 89 Treas. Dec. 242, T.D. 53599:

(b) The words "component of chief value", wherever used in this Act, shall be held to mean that component material which shall exceed in value any other single component material of the article involved; and the value of each component material shall be determined by the ascertained value of such material in its condition as found in the article.

Although it would seem from the wording of the statute that the foregoing definition and method of determining value are limited to those situations wherein the actual words, "component material of chief value," are used in a tariff provision, nevertheless, the definition has been consistently applied wherever the component material of chief value must be determined. *Seeberger* v. *Hardy*, 150 U.S. 420; *Turner & Co. et al.* v. *United States*, 12 Ct. Cust. Appls. 48, T.D. 39997; *United States* v. *Mrs. S. Bacharach, supra.*

Moreover, the words, "and the value of each component material shall be determined by the ascertained value of such material in its condition as found in the article," have been held to mean the value of such material in the state in which it is originally put into the article, to wit, at the time when nothing further remains to be done to it as material and it is ready to be combined or joined with other materials in the manufacture of the article. *Seeberger* v. *Hardy, supra; United States* v. *Bernard, Judae*, 15 Ct. Cust. Appls. 172, T.D. 42231.

It is to be noted that the statute limits the definition to "that component material which shall exceed in value any other single component material * * *." This limitation has been rigidly adhered to, and it has been held that the only deviations permitted are in those instances where Congress has expressly prescribed exceptions to the rule. *Chin & Co.* v. *United States*, 11 Ct. Cust. Appls. 124, T.D. 38932; *Steinhardt & Bro.* v. *United States*, 8 Ct. Cust. Appls. 372, T.D. 37629.

Similarly, in the case of *Field & Co.* v. *United States*, 7 Ct. Cust. Appls. 332, T.D. 36876, a situation analogous to the one involved herein was before the court. In that case, the court had to consider the classification of a cloth woven of a warp yarn of wool and a weft yarn of wool and angora goat hair. The court held the two parts or components of the cloth were the warp yarn and the weft yarn. The values of the two parts were such that if each "yarn" were to be considered as a component material, the weft yarn, compound of angora goat hair and wool, would be in chief value, but if the "material" in the two yarns, wool and angora goat hair, were to be compared, the wool would be in chief value.

Our appellate court held the component materials of the cloth were wool and angora goat hair and that the value of the wool in the warp

yarn should be added to the value of the wool in the weft yarn and the total compared to the value of the angora goat hair in the weft yarn.

It, therefore, follows that the component materials of an article are the primary things or substances of which it is made. In the instant case, we have before us a woven fabric, composed of three separate components, i.e., rayon, cellophane, and aluminum. Each of the components had been processed prior to the joining of the materials into the fabric. The cellophane and aluminum were joined prior thereto and then woven with the rayon into the fabric. Hence, we have a woven fabric, composed of three components which were manufactured or woven into fabric in two operations. We are, therefore, of the opinion that the value of each of the components must be considered and taken as of the time each one is ready to be united with the other materials in the manufacture of the article or fabric.

Unfortunately, counsel for plaintiff was unable to obtain the necessary information as to the value of each of the components of the aluminum cellophane strips, other than the stipulated fact that the aluminum cellophane strip is of greater value than the rayon contained in the imported fabric. Plaintiff has, therefore, failed to establish the incorrectness of the classification and, accordingly, failed to overcome the presumption of correctness attaching to the collector's classification.

In view of the foregoing, it is unnecessary to consider further the claim of plaintiff herein made under paragraph 385, *supra*.

The protest is overruled and judgment will be rendered accordingly.